STATE of Missouri, Respondent,

v.

Wilbert HUNTER, Appellant.

No. ED 85151.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 29, 2005.

Craig A. Johnston, Assistant Public Defender, Columbia, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Wilbert Hunter ("Defendant") appeals from a judgment of the Circuit Court of City of St. Louis entered after a jury convicted him of burglary in the second degree, felony stealing over $500, and felony resisting arrest.[1] In his appeal, Defendant contends that the trial court erred in: (1) overruling his motion for judgment of acquittal at the close of the evidence with respect to the charge of felony resisting arrest; and (2) limiting questioning during *voir dire*. We affirm in part and reverse in part.

### Statement of the Facts and Proceedings Below

Viewed in the light most favorable to the verdict, the evidence adduced at trial establishes that, around 4:00 a.m. on February 10, 2003, two citizens witnessed a break-in at the Cigarettes for Less on Chippewa in St. Louis, Missouri. The witnesses saw two African–American men wearing hooded sweatshirts break a win-

---

1. All statutory references are to RSMo 2000,    unless otherwise noted.

dow and enter the store. When the men exited the store, they carried boxes of cigarettes and left in a red pickup truck with a silver metal toolbox. The pick-up truck headed east on Chippewa. Immediately thereafter, the witnesses separately called 911 to report the incident.

Officer Robert Farrow responded to the dispatched call. As Officer Farrow traveled west on Chippewa, he spotted a red pick-up truck matching the dispatcher's description driving in the opposite direction. Officer Farrow noticed two African–American men inside the pickup, one of whom was wearing a "puffy" jacket and a black stocking cap. Officer Farrow made an immediate U-turn and stopped at a stoplight behind the pick-up truck. As he waited at the intersection for the traffic light to change, Officer Farrow activated his patrol car's spotlight. As soon as Officer Farrow activated his spotlight, the pick-up truck drove through the red light. Officer Farrow turned on his roof lights and began to follow the pick-up truck. Although Officer Farrow momentarily lost sight of the pick-up truck, he shortly thereafter located the truck abandoned on a lawn.

When Officer Farrow approached the pick-up, he spotted two sets of fresh footprints in the snow adjacent to the truck. Although the cab was empty, Officer Farrow found a black down jacket and a black knit cap. In the bed of the pick-up, Officer Farrow found a plastic liner for a trash can, 62 cartons of cigarettes, 31 loose packs of cigarettes, 102 lighters and a roofer's hammer mounted on a pipe.

Officer Farrow requested backup, to assist him in searching for the occupants of the pick-up truck. Officer James Siebum and his police dog, Glyss, responded to the call. Upon arriving at the scene, Officer Siebum noticed that the footprints suddenly stopped near vehicles parked down the street. Glyss pulled on his lead as he was trying to get under the vehicles. Officer Siebum announced twice that he was a police officer and that he had a canine with him. Following his second announcement, Officer Siebum released Glyss's lead and Glyss went under a truck and pulled out Defendant. Officer Siebum placed Defendant under arrest.

Officer Siebum and Glyss returned to the abandoned pick-up truck and followed the second set of footprints to a shed on another street. Again, Officer Siebum announced that he was a police officer and that he had a canine assisting him. Hearing no response, Officer Siebum released Glyss who jumped through a broken window and apprehended Defendant's accomplice by biting him on the hand.

Police transported Defendant and his accomplice to the police station for questioning. Defendant claimed that he did not know anything about the burglary or where the cigarettes came from. Defendant explained that a friend picked him up, informed him that the truck was stolen and asked for help stealing a moped. Defendant also stated that he fell asleep and when he awoke, a police car was following the pick-up truck. Finally, Defendant asserted that he only ran because his friend ran and he did not want to get caught by the police.

The State charged Defendant, as a prior and persistent offender, with second degree burglary, stealing, resisting arrest and possession of burglar's tools.[2] Following the presentation of evidence at trial, a jury found Defendant guilty of second degree burglary, felony stealing and felony resisting arrest. The trial court sentenced Defendant to concurrent terms of ten

---

2. The possession of burglar's tools count was severed and later *nolle prosequied*.

years for second degree burglary, five years for felony stealing and one year for felony resisting arrest. This appeal followed. .

### Discussion

### A. Sufficiency of the Evidence

In his first point, Defendant claims that the trial court erred when it denied his Motion for Judgment of Acquittal at the close of all evidence with respect to the charge of felony resisting arrest. Specifically, Defendant asserts that there was insufficient evidence that Officer Farrow was making an arrest of Defendant and that Defendant reasonably should have known that he was being arrested for burglary. Notably, the State concedes that, under the facts and circumstances of this case, the trial court erred in entering a verdict on the felony resisting arrest charge and the evidence at trial was only sufficient to show misdemeanor resisting arrest.

We will affirm a trial court's denial of a motion for judgment of acquittal if, at the close of evidence, there was sufficient evidence from which reasonable persons could have found the defendant guilty of the charged offense. *State v. Small,* 873 S.W.2d 895, 896 (Mo.App. E.D.1994). "When reviewing the sufficiency of the evidence, we review all evidence and inferences reasonably drawn from the evidence in the light most favorable to the verdict, and disregard all contrary evidence and inferences." *State v. Berry,* 54 S.W.3d 668, 675 (Mo.App. E.D.2001).[3]

Pursuant to Section 575.150, a person commits the crime of resisting or interfering with arrest, detention or stop if:

knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual or vehicle, or the person reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual or vehicle, for the purpose of preventing the officer from effecting the arrest, stop or detention, the person:

(1) Resists the arrest, stop or detention of such person by using or threatening the use of violence or physical force or by fleeing from such officer; or

(2) Interferes with the arrest, stop or detention of another person by using or threatening the use of violence, physical force or physical interference.

... Resisting or interfering with an arrest for a felony is a class D felony. Resisting an arrest by fleeing in such a manner that the person fleeing creates a substantial risk of serious physical injury or death to any person is a class D felony; otherwise, resisting or interfering with an arrest, detention or stop is a class A misdemeanor.

Section 575.150.

It is well-established that "the gravamen of the offense is resisting an arrest, not flight from a law enforcement officer [and] the offense of resisting arrest cannot occur unless a law enforcement officer actually contemplates an arrest." *State v. Long,* 802 S.W.2d 573, 575–76 (Mo. App. S.D.1991). Here, the record does not contain sufficient facts from which reasonable jurors could have found that Defen-

---

**3.** However, where, as here, an appellant fails to properly preserve an issue for appeal, appellate review is discretionary and only for plain error. *State v. Stewart,* 17 S.W.3d 162, 166 (Mo.App. E.D.2000). To warrant relief under this standard, appellant must establish a manifest injustice or a miscarriage of justice. *State v. Dudley,* 51 S.W.3d 44, 53 (Mo. App. W.D.2001).

dant was fleeing from Officer Farrow, that Officer Farrow was arresting Defendant or even that Officer Farrow was contemplating Defendant's arrest. Indeed, the facts merely show that Officer Farrow stopped his patrol car at a stoplight behind a pick-up truck matching the dispatcher's description and shined a spotlight into the truck. The record reveals that as soon as Officer Farrow activated his spotlight, the driver of the pick-up truck drove through the red light prompting Officer Farrow to activate his roof lights and follow the pick-up truck. The record does not contain proof that Defendant reasonably should have known that, when he saw a police car following a pick-up in which he was a passenger, he was being arrested for felony burglary. Moreover, Officer Farrow never testified that when he turned on his patrol lights and followed the pick-up, he intended to arrest Defendant for burglary. As a result, we agree that the record contains insufficient evidence to support Defendant's felony resisting arrest conviction.

■ The State argues that in light of the insufficient evidence to support Defendant's felony resisting arrest conviction, we should reverse this aspect of the judgment and remand to the trial court with an order directing the trial court to enter a verdict for misdemeanor resisting arrest and re-sentence Defendant accordingly. Candidly, the State acknowledges that we discussed this precise issue, and reached the opposite conclusion, in *State v. Brooks*, 158 S.W.3d 841 (Mo.App. E.D.2005), Defendant's accomplice's appeal.

In both this case and *Brooks*, the State argued that, pursuant to *State v. Dooley*, 919 S.W.2d 539, 542 (Mo.App. E.D.1995), where a conviction of a greater offense has been overturned for insufficiency of the evidence, we may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense. As we held in *Brooks*, however, this rule is inapplicable where, as here, the jury was not required to find all of the elements of misdemeanor resisting arrest in order to convict Defendant of felony resisting arrest. *See Brooks*, 158 S.W.3d at 852. Thus, as in *Brooks*, we decline to enter a conviction for misdemeanor resisting arrest. Point granted.

### B. Voir Dire

In his second point, Defendant asserts that the trial court erred when it precluded him from asking whether prospective jurors owned a dog that had bitten a person, how the prospective juror would react if bitten by a police dog, and what prospective jurors thought about the use of police dogs to make arrests. Defendant contends that by limiting this line of questioning, the court prevented him from determining if prospective jurors held any preconceived notions, prejudices or biases which would preclude them from fully considering Defendant's theory of the case.

■ As an initial matter, we note that the purpose of *voir dire* is to allow for the selection of a fair and impartial jury through the unveiling of prospective jurors' biases or prejudices. *State v. Leisure*, 749 S.W.2d 366, 373 (Mo.banc 1988). As a result, "a liberal latitude is allowed in the examination of jurors." *State v. Clark*, 981 S.W.2d 143, 146 (Mo.banc 1998) *quoting State v. Granberry*, 484 S.W.2d 295, 299 (Mo.banc 1972). The trial judge is in the best position to determine whether questions raised in *voir dire* assure the presence of a fair and impartial jury without amounting to a prejudicial presentation of the evidence. *Leisure*, 749 S.W.2d at 373. Accordingly, we review a trial court's decision to disallow certain questions during *voir dire* for abuse of discretion.

322

*Clark,* 981 S.W.2d at 146. "The party asserting abuse has the burden of demonstrating a real probability that he was thereby prejudiced." *State v. Kreutzer,* 928 S.W.2d 854, 861 (Mo.banc 1996).

▆▆ The record does not support Defendant's assertion that the trial court imposed any unreasonable limitations on the scope of *voir dire* that caused him prejudice or prevented him from determining if prospective jurors held any preconceived notions, prejudices or biases about his theory of the case, assuming his theory of the case had something to do with police dogs. To the contrary, the record reveals that during *voir dire* both the State and the Defendant discussed the use of police dogs to assist in arrest. During the State's *voir dire,* the prosecutor asked the jury, "Now, I want to know if you were to hear that a police dog bit a suspect would that create any—maybe more sympathy towards the defendant in this case?" The trial court clarified, "You mean to the point where they couldn't follow the Court's instructions, is that what you're asking?" The prosecutor replied, "Or would that create maybe some bias against the State?" A number of prospective jurors responded, "No."

When the prosecutor asked one panel member if the fact that a police dog bit a suspect would affect his decision at all, he responded "No." Another prospective juror asked whether the "dog bit him just to bite him" or whether the "dog was doing his job." This prospective juror later said it would not affect her if the dog was doing its job. The prosecutor then asked the entire panel, "Is there anybody here that thinks that might create some bias if they

were to hear that the police dog bit the defendant?"

The record indicates that the trial court allowed defense counsel to further explore prospective jurors' feelings on the use of police dogs. To that end, defense counsel asked the panel whether anyone had ever "dealt with a police dog before." Likewise, the trial court gave defense counsel latitude during *voir dire* to further question the prospective juror who told the prosecutor that she would not be affected by the fact that a police dog bit a suspect as long as the dog was doing a job when it bit a suspect. During defense counsel's inquiry, this prospective juror explained that she felt differently about a situation where the suspect acted inappropriately and thereby provoked the dog versus a situation where the police used the dog in an abusive and unnecessary way. Accordingly, the record does not support Defendant's assertion that his *voir dire* was so limited that it prevented him from discovering any preconceived notions, prejudices or biases prospective jurors may have had regarding the use of police dogs.[4] Point denied.

### Conclusion

Defendant's conviction for felony resisting arrest is reversed and the corresponding sentence is vacated. The judgment of the trial court is affirmed in all other respects.

MARY K. HOFF, P.J., and CLIFFORD H. AHRENS, J., Concur.

4. We are equally unpersuaded by Defendant's contention that he suffered prejudice as a result of the trial court's decision to thwart defense counsel's attempt to expand *voir dire* into irrelevant areas, namely the temperament of prospective jurors' household pets.

We fail to perceive in what respect prospective juror attitudes towards pet dogs bear in any way on Defendant's defense. More importantly, we do not agree that Defendant was prejudiced by the trial court's limitation of questioning about pet dogs.