STATE of Missouri, Respondent,

v.

Michael St. GEORGE, Appellant.

No. 27554.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 28, 2007.

Margaret M. Johnston, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Lisa M. Kennedy, Jefferson City, for respondent.

ROBERT S. BARNEY, Judge.

Michael St. George ("Appellant") appeals his convictions by a jury for the Class B felony of assault of a law enforcement officer in the second degree, a violation of section 565.082, and the Class D felony of resisting arrest, a violation of section 575.150.[1] The trial court sentenced Appellant to seven years in the Missouri Department of Corrections for assaulting a law enforcement officer and four years in the Missouri Department of Corrections for resisting arrest with the sentences to run concurrently. Appellant asserts two points of trial court error.[2] As explained below, we find them to be without merit. We affirm.

Viewing the evidence in the light most favorable to the jury's verdict, *State v. Hunter*, 179 S.W.3d 317, 318 (Mo.App. 2005), the record reveals that on May 28, 2004, Officer Randall Blackburn ("Officer Blackburn") of the Springfield Police Department was on traffic patrol on his police motorcycle when he saw Appellant driving a white Honda Civic which was traveling 45 miles-per-hour in a 30 mile-per-hour zone. Officer Blackburn followed Appellant's car for a short distance before turning on his emergency lights and activating his siren. Appellant pulled his vehicle over to the side of the road behind a parked car. Officer Blackburn followed and parked his motorcycle a half a car length behind Appellant's vehicle; exited

the motorcycle on the right-hand side; and approached Appellant's vehicle on foot. Appellant's vehicle then reversed in the direction of Officer Blackburn. According to Officer Blackburn, "[w]hen [Appellant's vehicle] backed up, it backed to the right at an angle so that it could then clear the vehicle that it had stopped behind." Officer Blackburn related he "thought that the bike was going to be struck or [him]self." Appellant then sped away.

Officer Blackburn pursued Appellant's vehicle with his lights activated and "bumped" his siren a "couple of times" as he followed the vehicle on his motorcycle.

Then, for the second time, Appellant pulled up behind another vehicle, a truck which was stopped at a stop sign. Officer Blackburn "kind of pulled in behind [Appellant's vehicle] but off kind of to the driver's side of the vehicle, but [he] stayed back about the rear of the bumper." The driver's side window was open on Appellant's vehicle. At trial Officer Blackburn related, "I was giving orders to [Appellant] to shut the vehicle off, you know, let's not make more of this than it has to be. I just need to see his driver's license and insurance card, and he's just going to get a couple of tickets." According to Officer Blackburn, Appellant "then turned to the left, went around the truck, and then proceeded southbound." Officer Blackburn activated his siren, continued to use his emergency lights, and followed Appellant.

Appellant eventually stopped for the third time at another stop sign. Officer Blackburn pulled his motorcycle next to Appellant's vehicle to its left so that Offi-

---

1. Unless otherwise stated, all statutory references are to RSMo (2000).

2. We note that neither of Appellant's points relied on challenge his conviction for the Class B felony of assault of a law enforcement officer in the second degree per section 565.082.

cer Blackburn was even with the rear door of the vehicle. He turned off his siren. He informed Appellant to "shut the vehicle off," and that "this [was getting] out of hand. . . ." He told Appellant "[he] was going to take him into custody." When Appellant failed to shut down the operation of his vehicle as instructed, Officer Blackburn "put [his] hand on [his] weapon to let him know that this [wa]s serious, that he need[ed] to stop." Appellant then said "f——you" to Officer Blackburn and "made an extreme left turn toward [Officer Blackburn] and the motorcycle."

Officer Blackburn testified that at that point he was forced to make "an extreme maneuver, dip to the left . . ." to get out of the path of Appellant's vehicle. Officer Blackburn testified that had he not been able to get out of the way of Appellant's vehicle, it would have struck him. When asked on direct examination whether "up until this time, what was your pursuit? How would you describe your pursuit?," Officer Blackburn responded that "[a]t—it was more—up to this point, kind of normal car stop, up until he drove away the first time." On further questioning, the prosecutor asked Officer Blackburn, "Did it change any after you had to do the dip maneuver?" Officer Blackburn answered, "Yes, sir. At this point it became a felony."

The record further reveals that Appellant then went west on Chestnut Expressway where he ran a red light to turn south onto Jefferson Street. Officer Blackburn pursued Appellant with his sirens and emergency lights activated for several blocks as the two vehicles traveled at speeds of approximately 50 miles-per-hour through a 25 mile-per-hour zone. During the pursuit, Appellant ran several other red lights, passed other cars on the wrong side of the road, and accelerated to unsafe speeds. Appellant then pulled behind an

apartment complex on Elm Street, stopped his vehicle, and fled. Officer Blackburn "grounded [his] bike" so he could come off of it at a run and chased Appellant on foot "[u]p the fire escape to the rear of the apartment complex."

At the top floor of the apartment complex, Appellant entered through a partially ajar door which locked when he closed it and barred Officer Blackburn from entering. Officer Blackburn kicked in the door and "[p]roceeded down the hallway giving commands to [Appellant] to stop." Appellant stopped in front of the last apartment in the hallway, "and he had some keys out and he was frantically trying to get the door unlocked." Appellant got the door open, slid through the door, and closed the door behind him before Officer Blackburn could get to him. Officer Blackburn kicked the door in and tackled Appellant who was standing inside.

Officer Blackburn placed Appellant under arrest for assault of a law enforcement officer, resisting arrest, and nine driving violations including two incidents of careless and imprudent driving, speeding, failure to wear a seat belt, three signal violations, failure to yield to an emergency vehicle, and driving while his license was revoked.

Appellant presented no evidence at trial. As previously related, the jury convicted Appellant of felony resisting arrest and felony assault on a law enforcement officer as charged and he was sentenced by the trial court to seven years imprisonment on the assault charge as well as four years on the resisting arrest charge with the sentences to run concurrently. This appeal by Appellant followed.

█ In his first point on appeal Appellant asserts the trial court erred in denying his motion for judgment of acquittal at the close of all evidence regarding the

charge of felony resisting arrest because "there was insufficient evidence from which a juror could find beyond a reasonable doubt ... that at the time [Appellant] fled from Officer Blackburn, [Officer] Blackburn was arresting [him] for a felony."

 "We will affirm a trial court's denial of a motion for judgment of acquittal if, at the close of evidence, there was sufficient evidence from which reasonable persons could have found the defendant guilty of the charged offense." *Hunter*, 179 S.W.3d at 320. " 'We review the denial of a motion for acquittal to determine if the State adduced sufficient evidence to make a submissible case.' " *State v. Howard*, 973 S.W.2d 902, 906 (Mo.App.1998) (quoting *State v. Foster*, 930 S.W.2d 62, 63 (Mo.App.1996)). " 'Our standard of review is whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.' " *State v. Smith*, 185 S.W.3d 747, 758 (Mo.App.2006) (quoting *State v. Wright*, 998 S.W.2d 78, 81 (Mo.App.1999)). "The court must examine the elements of the crime and consider each in turn; reviewing the evidence in the light most favorable to the judgment, disregarding any contrary evidence, and granting the State all reasonable inferences from the evidence." *Id.* "We defer to the superior position of the jury to assess the credibility of witnesses and the weight and value of their testimony." *Id.*

Section 575.150, Cum.Supp.2003, sets out in pertinent part:

1. A person commits the crime of resisting ... arrest, detention, or stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual or vehicle, or the person reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual or vehicle, for the purpose of preventing the officer from effecting the arrest, stop or detention, the person:

(1) Resists the arrest, stop or detention of such person by using or threatening the use of violence or physical force or by fleeing from such officer....

\* \* \*

2. This section applies to arrests, stops or detention with or without warrants and to arrests, stops or detentions for any crime, infraction or ordinance violation.

3. A person is presumed to be fleeing a vehicle stop if that person continues to operate a motor vehicle after that person has seen or should have seen clearly visible emergency lights or has heard or should have heard an audible signal emanating from the law enforcement vehicle pursuing that person.

\* \* \*

5. Resisting or interfering with an arrest for a felony is a class D felony. Resisting an arrest by fleeing in such a manner that the person fleeing creates a substantial risk of serious physical injury or death to any person is a class D felony; otherwise, resisting or interfering with an arrest, detention or stop is a class A misdemeanor.

 " 'The gravamen of the offense is resisting an arrest, not flight from an officer. Accordingly, the offense of resisting arrest cannot occur unless a law enforcement officer actually contemplates an arrest.' " *State v. Christian*, 184 S.W.3d 597, 603 (Mo.App.2006) (quoting *State v. Brooks*, 158 S.W.3d 841, 850–51 (Mo.App. 2005)). " 'Resistance to an arrest must occur when the person knows that an officer is making an arrest.' " *Id.* (quoting *State v. Dossett*, 851 S.W.2d 750, 752 (Mo. App.1993)). " 'The arrest must be in prog-

ress when the 'resistance' occurs.'" *Id.* (quoting *State v. Shanks,* 809 S.W.2d 413, 418 (Mo.App.1991)). "An arrest is in progress once the officer is attempting to actually restrain or control the person of the defendant." *Id.*

▇▇▇ "For resisting arrest to amount to a felony, the State must prove either that the offense for which the defendant was arrested was a felony or that the defendant resisted arrest 'by fleeing in such a manner that the person fleeing created a substantial risk of serious physical injury or death to any person.'"[3] *State v. Orton,* 178 S.W.3d 589, 593 (Mo.App.2005) (quoting § 575.150.5, RSMo. Cum.Supp.2003).

In the argument portion of his brief Appellant appears to make much of the fact that while Appellant was eventually charged with the felony of assault of Officer Blackburn, "there was no evidence that [Officer Blackburn] was 'making an arrest' for a felony when [Appellant] *initially* fled." (Emphasis added). Appellant maintains the "evidence clearly showed that [Appellant] fled when [Officer Blackburn] was trying to stop him for several traffic offenses, and *during that flight* he committed the charged felony and continued to flee thereafter." (Emphasis added). The conclusion Appellant appears to reach is that since Officer Blackburn did not arrest Appellant until after they were inside the apartment and "[t]here was no flight after that arrest," Appellant could not have resisted being arrested for the

felony of assault of a law enforcement officer in the second degree.

▇▇▇ Appellant is correct when he asserts that only at the conclusion of the Appellant's third stop did his actions give rise to Officer Blackburn's reasonable determination that Appellant had committed the felony of assault on a law enforcement officer.[4] However, his focus on his initial flight to extirpate him from the charge of resisting arrest for a felony is of no avail to him. "During a suspect's flight from a law enforcement officer, the actions of the suspect may constitute a separate crime, giving rise to a reason to arrest the suspect." *State v. Chamberlin,* 872 S.W.2d 615, 618 (Mo.App.1994).

There are similarities between the facts in the instant case and that of *State v. Hopson,* 168 S.W.3d 557 (Mo.App.2005). In *Hopson,* Officer Bachman of the City of Jennings was conducting a routine patrol when he responded to a call to investigate a complaint. *Id.* at 560. When arriving on the scene he noticed the *Hopson* defendant was "driving a car with a license plate that looked like the tags had been torn away from another license plate." *Id.* Upon running a radio check, Officer Bachman "discovered that no license plate was issued to the car driven by [the defendant]." *Id.* The officer "activated his emergency lights in an effort to pull [the defendant] over," whereupon the defendant initially "slowed down over the length of the street in front of three or four houses and then threw three 'off-white

---

3. Appellant was not charged with the felony of resisting arrest based upon his fleeing in a manner which "created a substantial risk of serious injury or death to any person." § 575.150.5, RSMo. Cum.Supp.2003.

4. Indeed, Officer Blackburn related that after Appellant's *second* stop, Officer Blackburn informed Appellant that he "just need[ed] to see [Appellant's] driver's license and insurance card," because "he[ ][was] just going to get a couple of tickets." Officer Blackburn then determined to arrest Appellant for a felony, i.e., assault of a law enforcement officer, *only* after Officer Blackburn was forced to "make an extreme maneuver," and "dip to the left" to get out of the path of Appellant's vehicle, *subsequent* to Officer Blackburn's *third* stop of Appellant's vehicle.

chunks' " wrapped in individual plastic baggies "from the driver's side window." *Id.* When Officer Bachman stopped his vehicle and picked up the contraband materials, the defendant sped off. *Hopson,* 168 S.W.3d at 560. Officer Bachman gave chase and turned on the siren of his vehicle. *Id.* While fleeing, the *Hopson* defendant operated his vehicle in a very dangerous manner, coming "within ten to fifteen feet of hitting ..." some people in the street, and, thereafter, turning a corner "at a speed of about forty miles per hour, making the car appear 'to almost go on the two wheels.' " *Id.* "Once he was halfway down the street, [the defendant] stopped the car, got out, and ran down the street," all the while being pursued by Officer Bachman. *Id.* Eventually another officer apprehended defendant. *Id.*

On appeal of his conviction for felony resisting arrest, the *Hopson* defendant contended there was insufficient evidence to prove that Officer Bachman was arresting him and that defendant should have known he was being arrested. *Hopson,* 168 S.W.3d at 561. The Eastern District of this Court determined "the jury could properly find Officer Bachman was making an arrest of [the defendant] for felony possession of a controlled substance, and that [the defendant] fled from Officer Bachman for the purpose of preventing that arrest." *Id.* The Court stated that it "was not until Officer Bachman picked up the plastic baggies of cocaine that [the defendant] began to flee." *Id.* Saliently, the Court noted in its footnote that the *Hopson* defendant, like Appellant in the present matter,

> attempts to focus on the *initial* stop of [the defendant]. At the time of the

*initial* stop, Officer Bachman had no intent of arresting [the defendant] for a felony, nor would [the defendant] have reasonably believed that he was being arrested. However, the crime was committed *after the initial stop* when [the defendant] threw cocaine out of the window and Officer Bachman recovered the cocaine. At that point, [the defendant] fled from Officer Bachman in an effort to resist arrest for possession of cocaine base.

*Id.* at 561 n. 3 (emphasis added).

In the instant matter, once Appellant speedily drove away after the highly dangerous operation of the vehicle *after* the third stop, Officer Blackburn gave chase with sirens and lights flashing. Appellant continued to resist arrest; this time for the underlying felony of assault of a law enforcement officer. "It [was] not necessary for the officer to specifically say 'you are under arrest,' when the circumstances indicate[d] the officer [was] attempting an arrest." [5] *Chamberlin,* 872 S.W.2d at 619; *Hopson,* 168 S.W.3d at 562. Furthermore, Appellant continued resisting arrest as he fled on foot at an apartment complex, again, while being chased by Officer Blackburn, all the while ignoring Officer Blackburn's command to stop.

Given all the factual circumstances previously described above, we can only conclude that Appellant should have reasonably recognized that Officer Blackburn was attempting to arrest him. *Hopson,* 168 S.W.3d at 561; *Chamberlin,* 872 S.W.2d at 619. The evidence was sufficient to support Appellant's conviction for felony resisting arrest. *Hopson,* 168 S.W.3d at 562. Point denied.

---

**5.** *See also* § 575.150.3, Cum.Supp.2003, ("[a] person is presumed to be fleeing a vehicle stop if that person continues to operate a motor vehicle after that person has seen or should have seen clearly visible emergency lights or has heard or should have heard an audible signal emanating from the law enforcement vehicle pursuing that person").

Appellant's second point of trial court error asserts the trial court erred in refusing to instruct the jury as to the lesser included offense of resisting arrest. Specifically he asserts that "the evidence provided a basis for both an acquittal of the greater felony offense and a conviction on the lesser misdemeanor offense ..." because

the jury could have found that [Appellant] fled from an arrest for misdemeanor traffic offenses rather than for felony assault because Officer Blackburn testified that after [Appellant] had committed several misdemeanor traffic offenses and fled from [Officer] Blackburn, he told [Appellant] that he was going to take [him] into custody, and after [Officer] Blackburn put his hand on his weapon, [Appellant] drove his car at [Officer] Blackburn while continuing to flee, and thus the jury could have concluded that the crime of misdemeanor resisting arrest occurred and [Appellant's] prolonged flight was merely a continuation of that misdemeanor resisting arrest.

An offense is a lesser included offense if it is impossible to commit the greater without necessarily committing the lesser. *State v. Barnard,* 972 S.W.2d 462, 465 (Mo.App.1998). " 'If the greater of two offenses includes all the legal and factual elements of the lesser, the greater includes the lesser; but if the lesser offense requires the inclusion of some necessary element not so included in the greater offense, the lesser is not necessarily included in the greater.' " *State v. Brown,* 58 S.W.3d 649, 655 (Mo.App.2001) (quoting *State v. Neighbors,* 613 S.W.2d 143, 146 (Mo.App.1980)). "Regardless, a trial court is not required to instruct on a lesser-included offense 'unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.' " *Brown,* 58 S.W.3d at 655 (quoting § 556.046.2). In this connection, a "court must give an instruction on a lesser included offense only if supported by the evidence." *Barnard,* 972 S.W.2d at 466. "There must be substantial evidence to support an instruction for a lesser-included offense." *State v. Deprow,* 937 S.W.2d 748, 750 (Mo.App.1997).

Appellant submitted "Jury Instruction No. B" to the trial court which was a verdict directing instruction for misdemeanor resisting arrest. The trial court denied Appellant's request for the lesser included offense instruction and stated it "declined to instruct that way ... if the jury agrees with the defense's position, they [c]ould simply find [Appellant] not guilty since the misdemeanor was never charged." [6] Instead, the trial court instructed the jury on the felony charge of resisting arrest as set out in "Instruction No. 9" proffered by the State.[7]

It is our view that the trial court did not err in failing to give "Jury Instruction No.

---

6. The denied instruction, "Jury Instruction No. B," tracked the language of the verdict director for felony resisting arrest, except that paragraph two contained the name of a misdemeanor. i.e., "multiple traffic offenses," instead of the name of a felony offense. i.e., "felony assault of a law enforcement officer."

7. "Instruction No. 9" set out:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt: First that on or about the 28th day of May, 2004, in the County of Greene, State of Missouri, [Officer] Blackburn was a law enforcement officer, and

Second, that [Officer] Blackburn was making an arrest of the [Appellant] for felony assault of a law enforcement officer, and

Third, that [Appellant] knew or reasonably should have known that a law enforcement officer was making an arrest of [Appellant], and

Fourth, that for the purpose of preventing the law enforcement officer from making the arrest, [Appellant] resisted by fleeing from the officer,

B." Appellant sought an instruction requiring the State to prove Officer Blackburn was in the midst of arresting Appellant for "multiple traffic offenses" at the time he resisted arrest; however, this element clearly is not an element of felony resisting arrest, which required the State merely to prove Appellant was being arrested for a felony, in this case felony assault of a law enforcement officer. "An instruction on a lesser offense is not proper unless it is impossible to commit the greater without committing the lesser." *Barnard*, 972 S.W.2d at 465. Here, the facts revealed that it was possible for Appellant to have committed a felony without first committing a misdemeanor. *See id.* Thus, the trial court did not err in refusing to instruct the jury as to the crime of misdemeanor resisting arrest as set out in Appellant's "Jury Instruction No. B." Point Two is denied.

The judgment of the trial court is affirmed.

GARRISON and LYNCH, JJ., concur.

then you will find [Appellant] guilty under

Count II of resisting arrest.