Paul C. Wilson, Judge
Justin Jones appeals the judgment of the St. Louis County Circuit Court, entered after a jury trial, convicting him of, and sentencing him for, one count of burglary in the first degree and an associated count of armed criminal action, one count of attempted robbery in the first degree and an associated count of armed criminal action, one count of assault in the third degree, and one count of resisting arrest for a felony. On appeal, Jones claims that the trial court erred by: (1) overruling his motion for judgment of acquittal on the armed criminal action charge associated with his burglary conviction; (2) overruling his motion for judgment of acquittal on the resisting arrest charge; and (3) overruling his 'motion for a continuance. The judgment is affirmed.

Background

The' evidence at trial supported the following findings and inferences beyond a reasonable doubt. On February 10, 2010, C.H. returned to her home from grocery shopping shortly after 11 p.m. She drove her vehicle into the driveway, parked, and went inside the home through the front door to ask for help in unloading the groceries. C.H. then walked back outside, opened the automatic garage door, and backed her ear into the attached garage. She got out of the car, grabbed a few bags of groceries, and walked toward the interi- or door between the garage and the house. There, C.H, pressed a keypad to lower the garage door and, as the door began to lower, turned to go through the doorway and into her house. Before she could enter her home, however, C.H. heard the garage door stop and start to go back up, which it was programmed to do if the threshold sensors were triggered. C.H. turned toward the garage door when 'she heard it start to go back up. and saw Jones coming into the garage and holding out a black gun in both hands. C.H. ran into the house, slamming the door behind her, and went into the'nearest bedroom, where she activated her home alarm and called the police. ¡
M.H., one "of C,H.’s sons, was in the kitchen doing' dishes when this occurred. Hearing the interior door to the garage open, slam shut, and open again, M.H. turned toward that door and saw Jones pointing a gun at him. Jones told M.H. to come over to him and, when he did, Jones put M.H. in a “headlock” and repeatedly demanded “dope, money, and weed.’’ When MiH. told Jones he did not have any, Jones pushed M.H. toward the back door. M.H. told Jones he did not want to *104 leave, ,so Jones began to push him through the house toward the interior door to the garage. On the way, Jones’ cell phone rang. Jones let go of M.H. to try to answer his phone, and M.H. grabbed Jones’ gun. Jones abandoned his effort to answer his cell phone and began to struggle with M.H. to regain control of the gun. When Jones bit M.H.’s jaw and tried to gouge out his eyes, M.H. was forced to relinquish his hold on Jones’ gun. Having regained control of his gun, Jones pointed it at M.H. for a moment and then fled out the back door of the home without firing a shot. The police arrived shortly thereafter, and M.H. pointed them in the direction Jones had fled.
Officer Virgil Avery was on patrol at the time these crimes occurred. When he received the dispatch regarding the incident and a description of the perpetrator, he responded to the area to set up containment. Officer Avery drove to a subdivision that was located directly behind C.H.’s home and separated from that house only by a wood fence. Within seconds of exiting his vehicle, Officer Avery saw Jones running from the direction of C.H.’s house. Jones matched the description of the 'perpetrator that Officer Avery had just received. Officer Avery identified himself as a police officer and told Jones to stop running. ■ Jones looked at the officer but continued to run away. Officer Avery gave chase, and Jones continued to flee. After approximately 15 seconds, Officer Avery caught Jones from, behind, placed him in handcuffs, and arrested him immediately for the robbery attempted in C.H.’s Jiome,
After Officer Avery detained Jones, Officer Robert Dean and Lass, his K-9 partner, performed a “trackback” from the location where Jones was arrested. The track led to > the'back door of C.H.’s home. Officer Kathryn Mumford then performed a “victim showup,” meaning she picked M.H. up from his house, told him that the police had found someone that they would like him, to sees and drove M.H. to where Jones was located. When Officer Mumford asked M.H. if he had seen Jones before, M.H. identified Jones as the individual who had just assaulted him in his home.
' Jones was charged with one count of burglary in the first degree and an associated count of armed criminal action, one count of attempted robbery in-the first degree with a separate associated count of armed criminal action, one count of assault in the third degree, and one count of resisting arrest for a felony. With respect to the first-degree burglary charge, the state alleged that Jones “knowingly entered unlawfully in an inhabitable structure ... possessed by [C.H.] ..., for the purpose of committing Robbery in the First Degree therein, and while in such inhabitable structure there was present in such inhabitable structure [C.H. and M.H.], persons who were not participants in the crime.” The associated armed criminal action count alleged that Jones committed the felony of first-degree burglary “by, with and through, the knowing use, assistance and aid of a deadly weapon.” , With respect to the resisting arrest charge, the indictment alleged that Jones resisted arrest “by fleeing” from an officer.
At the close of the state’s case at trial, Jones moved for a judgment of acquittal. He argued that there was insufficient evidence to support the charge for armed criminal action associated with the first-degree burglary charge because there was no evidence that he actually “used” the gun to effect entry into C.H.’s garage or that he “used” the gun to intimidate C.H. into granting him entry. Jones also contended that there was insufficient evidencé to support the charge for resisting arrest *105 because there was no evidence showing that he ran from the officer after the arrest occurred or was attempted. The trial court overruled the motion.
Jones did not present any evidence' on his own behalf, and the jury found him guilty on all counts. Jones filed a motion fd'r judgment of acquittal or, in the alternative, a new • trial, which ‘ the trial court overruled. The trial court entered a judgment and sentences consistent with the jury’s verdicts. Jones now appeals, and this Court has jurisdiction under article V, section 10, of the Missouri Constitution.

Analysis

Jones raises three points on appeal.[1] His first and second points challenge the sufficiency of the evidence to support his conviction for armed Criminal action in connection with the first-degree burglary and his conviction for resisting arrest. Jones’ third point claims that the trial court erred by overruling his motion for a continuance.

I. Standard of Review

When reviewing a challenge to the sufficiency of the evidence, the standard of review is “whether there is sufficient evidence from which a reasonable juror might 'have found the defendant guilty beyond a reasonable doubt.” State v. Letica, 356 S.W.3d 157, 166 (Mo. banc 2011). “The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict.” State v. Belton, 153 S.W.3d 307, 309 (Mo. banc 2005). “This is not an assessment, of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have, found the essential elements of the crime beyond a reasonable doubt.” State v. Miller, 372 S.W.3d 455, 463 (Mo. banc 2012). In-reviewing the sufficiency of the evidence supporting a criminal .conviction, an appellate court “does not act as a ‘super juror’ with veto powers” but “gives great deference to ■the trier of fact.” Id. ,

II. Jones committed the burglary with the aid and assistance of a gun

A “person commits the crime of burglary in the first degree if he knowingly enters unlawfully. ... a building or inhabitable structure for the purpose of committing a crime therein, and when, in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom,” § 569.160,1,[2] and “[tjhere is present in the structure another person who is not a participant in the crime,” § 569.160.1(3).[3] A person commits *106 armed criminal action when he or she “commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon.” § 571.015.1.
In his first point, Jones 'argues that he cannot be guilty of armed criminal action because there was no evidence that he made “use” of the gun to overcome a physical obstacle in order to enter the garage in that the garage door automatically opened when his foot or leg triggered the sensor at the threshold of the garage. Nor, Jones argues, was the: evidence sufficient for the jury to find that he made “use” of: his gun to intimidate C.H. into granting him entry because C.H. did not see Jones with the gun until after he had crossed the threshold of the garage. - Because Jones contends these are the only means by which the state can convict him of armed criminal action in connection with this burglary, he maintains he must be acquitted as a matter of law. The Court rejects this argument and holds that the evidence was sufficient to support Jones’ conviction for armed criminal action in connection with the first-degree burglary.
Jones’ argument reads section 571.015 as though it limits armed criminal action solely to circumstances in which the defendant “uses a dangerous instrument or deadly weapon to commit any felony under the laws of this state.” But this is not how the statute reads, and construing section 571.015 so narrowly, ignores the other terms the legislature chose to include in that'statute.
“This Court’s primary rule of statutory interpretation is t.o give' effect to legislative intent as reflected in the plain language of the statute at issue.” Ivie v. Smith, 439 S.W.3d 189, 202 (Mo. banc 2014) (quoting Parktown Imports, Inc. v. Audi of Am., Inc., 278 S.W.3d 670, 672 (Mo. banc 2009)) (internal quotation marks omitted). “It is a basic rule of statutory construction that words should be given their plain and ordinary meaning whenever possible.” State ex rel. Jackson v. Dolan, 398 S.W.3d 472, 479 (Mo. banc 2013) (quoting Spradlin v. City of Fulton, 982 S.W.2d 255, 258 (Mo. banc 1998)) (internal quotation marks omitted).
Jones’ argument places great emphasis on the word “use” but ignores all of the other words the legislature used when enacting section 571.015. “When interpreting a statute, this Court must give meaning to every word or phrase of the legislative enactment.”’ State v. Moore, 303 S.W.3d 515, 520 (Mo. banc 2010). The statute reads:
[A]ny person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action....
§ 571.015.1 (emphasis added). These three prepositions (by, with, or through) and the three nouns those prepositions modify (use, assistance, or aid), demonstrate that section 571.015.1 was intended to reach as broadly as possible. Accordingly, the statute provides that Jones is guilty of armed'criminal action under this statute in connection with the burglary if the evidence was sufficient for the jury to find beyond a reasonable doubt any one of at least the following nine permutations:
*107 He committed this unlawful entry for the purpose of committing a felony by the use of his gun.
He committed this unlawful entry for the purpose of committing a felony by ' the assistance of his gun.
He committed this unlawful entry for the purpose of committing a felony by the aid of his gun.
He committed this unlawful entry for the purpose of committing a felony' with the use of his gun.
He committed this unlawful entry for the purpose of committing a felony with the assistance of his gun.
He committed this unlawful entry for the purpose of committing a felony with the aid of his gun.
He committed this unlawful entry for the purpose of committing a felony through the use of his gun.
He committed this unlawful entry for the purpose of committing a felony through the aid of his gun.
He committed this unlawful entry for the purpose of committing a felony through the assistance of his gun.
The legislature did not define the words “by,” “through,” “with,” “use,” “aid,” or “assistance” for purposes of section 571.015 but, in “the absence of a statutory definition, words, will be given their plain and ordinary meaning as derived from the dictionary.” State v. Oliver, 293 S.W.3d 437, 446 (Mo. banc 2009). The prepositions “by,” “through,” and “with” are defined as function words used to indicate the means, agency, or instrumentality of something else.[4] “Use” means “the act or practice- of employing something.” WEBSTER’S THIRD NEW INTERNATIONAL DICTIONARY- 2523 (3d ed.1993).
A person may walk'with the' “use” of a cane, but doing so does. not necessarily mean that the person could not walk without it.' By the same token, given the context of section 571.015, the noun “use” does not mean or suggest that the weapon must have been necessary to commit the crime or that — but for the- defendant’s “use”-of the weapon — the crime' could not have occurred.
Moreover, even if the definition of “use” did not encompass Jones’ conduct in this case, it is clear that the terms “assistance” and “aid” reach even- further. “Aid” refers to “the help given,” and “assistance” refers to ‘The help Supplied or given.” Id. at 44, 132. Neither of these terms suggests that the- help provided by, through, or with the weapon must have been essential to the commission of the crime or that, but for that help, the crime could not have occurred. Instead, the terms “aid” and “assistance” suggest the opposite. This construction is further strengthened and compelled by the fact that the nouns “aid” and “assistance” are included as alternatives to the noun “use.”
Accordingly, and without belaboring the applicability of, all nine permutations of section 571.015.1, there was sufficient evidence for the jury to find beyond a reasonable doubt that Jones committed first-degree burglary with- the assistance or aid of his gun. C.H. testified that she saw Jones immediately after he crossed the threshold of the garage. Even though C.H. did not see Jones at the precise moment he crossed the threshold of the garage, she did see Jones an instant later and — at that time — Jones already was holding, his gun *108 out in both hands and pointing it at C.H. As a result, the evidence was sufficient for the jury to find that Jones crossed the threshold of the garage with the aid or assistance of his gun regardless of whether Jones first broke the plane of the garage’s entrance with his gun, foot or knee.[5]
In support of his argument, Jones cites two decisions from the court of appeals that he claims require'the state to prove that the defendant made “use” of a weapon either to overcome a barrier to entry (e.g., break a window or open a door) or to threaten someone into granting entry before the defendant can be convicted of armed criminal action in connection with a burglary. See State v. Hopkins, 140 S.W.3d 143 (Mo.App.2004) (to be convicted of armed criminal action in connection with a burglary, the evidence must show that the defendant, used the knife to pry open the door or explicitly threaten the victim prior .to entry); State v. Carpenter, 109 S.W.3d 718, 723 (Mo.App.2003) (a defendant does not commit burglary by, with, or through the use, aid, or assistance of a gun unless the defendant shoots the door open or explicitly threatens the victim with the gun to compel the victim to open the door).[6] This is incorrect,
“ Armed criminal action under “section 571.015.1 does not require that the defendant actually attack or 'threaten an imminent attack with the weapon. It only requires that the defendant commit a crime “by, through, or with” the “use, assistance, or aid” of a weapon. In connection with a charge of burglary, therefore, section 571.015.1 does not require that the weapon must have been the means of forcing entry, either directly or indirectly through intimidation. Such might be a reasonable construction of the term “use” if it were the only term used in the statute, but “use” is just one of three alternatives describing the conduct prohibited by section 571.015.1. The addition of the words “assistance” and “aid” broaden the reach of the armed criminal action statute to any crime committed with the help of' a weapon, not merely to those crimes that necessarily resulted only from the use of a weapon.
The plain meaning of “assistance” and “aid,” especially when considered in light of the alternative prepositions “by, through, or with,” make it clear that the legislature intended section 571.015.1 to reach as far as possible and to discourage defendants from arming themselves during the commission of felonies by imposing a separate punishment when the defendant’s criminal purpose is assisted or aided by ready access to a dangerous weapon. Any other construction of section 571.015.1 robs the words “assistance” and “aid” of any *109 meaning in defining “armed criminal action.” ■
Here, Jones unlawfully entered C.H.’s garage with a gun' in his hands. The jury reasonably could infer that the gun “aided" or “assisted” Jones by bolstering his confidence to enter a garage that he kfiéw might be occupied.' The weapon provided “aid” or “assistance” by giving Jones both the ready means to overcome any resistance and the assurance that the mere presence of the gun would prevent or deter such resistance in the first instance. It does not matter whether such resistance occurs, or even whether anyone who might have offered such resistance actually saw him cross the threshold. The jury reasonably could infer that Jones crossed that threshold with the “aid” or “assistance” of his gun because the gun bolstered Jones’ confidence in making the unlawful entry. Accordingly, the evidence was sufficient for a jury to find beyond a reasonable doubt that Jones committed armed criminal action in connection with the' first-degree burglary.[7]
III. Jones Reasonably Should Have Known He Was Under Arrest.
In his second point, Jones claims that the evidence was not sufficient to support his conviction for resisting arrest. Section 575.150.1, RSMo Supp.2010, provides:
A person commits the crime of resisting or interfering with arrest, detention, or stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an. individual or vehicle, or the person reasonably should know that a law enforcement officer is making an arrest, or attempting to lawfully detain or lawfully stop an individual or vehicle, for the purpose of preventing the officer from effecting the arrest, stop or detention, the person:
(1), Resists the arrest, stop or detention of such person by using or threatening the use of violence or physical force ■ or by fleeing from such officer; or
(2) Interferes with the arrest, stop or detention of another person by using or threatening the use of violence, physical force or physical interference.
It is ,a class D felony to resist an arrest for a felony. .§ 575.150.5. . ,
To- prove that Jones ■ committed this crime, the state needed to establish three elements: (1) that Jones knew or reasonably should have known that a law enforcement officer was making an arrest or attempting to lawfully detain or stop him; (2) that he resisted this arrest, stop or detention by fleeing from that officer; and (3) that he did so for the purpose of preventing the officer from effecting the arrest, stop or detention. State v. Pierce, 433 S.W.3d 424, 434 (Mo. banc 2014). Jones now concedes that the evidence was sufficient to prove that Officer Avery .was attempting to arrest him for the crimes committed in C.H.’s home,[8] and that Jones *110 fled from Officer Avery to avoid his actions. In this Court, Jones claims only that there was insufficient evidence to prove that he knew or had reason to know Officer Avery was making an arrest. Jones asserts that he had no reason to know Officer Avery was attempting to arrest him even though the officer identified himself as a police officer, told Jones to stop running, and then gave chase. Instead, Jones argues that, because Officer Avery only said “stop running” and not “stop running, you are under arrest,”, it was reasonable for Jones to believe , the officer was — at most — attempting to stop or detain Jones for investigation, not arrest.[9]
“It is not necessary for the officer to specifically say, ‘you are under arrest,’ when the circumstances indicate the officer is attempting an arrest.” State v. Chamberlin, 872 S.W.2d 615, 619 (Mo.App.1994). In Chamberlin, the defendant fled .in a vehicle while an officer followed him with his emergency lights and siren activated. Id. The defendant eventually stopped his car and fled on foot. Id. The officer then exited his vehicle and yelled at the defendant to stop.- Id. The court of appeals found that these circumstances indicated that the officer was attempting an arrest even though the officer did not pursue the defendant on foot. Id. The court further found that “[t]he officer’s verbal commands and the invocation of-his authority as a state, trooper were an attempt to effect the arrest of the defendant.” Id. Accordingly, Chamberlin properly holds that this evidence was sufficient for a jury to find that the defendant, knew or had reason to know that the officer was attempting to arrest him. Id. The present case is similar to Chamberlin because the officers in both cases gave a verbal command to the defendants to stop running and invoked their authority as police officers. See Pierce, 433 S.W.3d at 434 (defendant is not “immune from arrest (or prosecution for resisting arrest) as long as he runs before the officer attempts to arrest him, nor would such a rule be supported by the language of the statute”).
In addition to those circumstances, the evidence in this case showed that Jones had even more compelling reasons to know that Officer Avery was attempting a felony arrest. Immediately after committing the crimes of burglary, attempted robbery, assault, and armed criminal action in C.H.’s home, Jones' was running away from the scene of those crimes when a uniformed officer identified himself as a police officer and commanded Jones to stop running. A defendant’s “presence at the crime scene and flight therefrom are evidence of consciousness of guilt.” State v. Clay, 975 S.W.2d 121, 140 (Mo. banc 1998); see also State v. Rodden, 728 S.W.2d. 212, 219 (Mo. banc 1987) (finding that flight shows a consciousness of guilt).
The jury was entitled to consider what Jones knew and what Jones had just done *111 when deciding whether Jones had reason to know whether Officer .Avery was attempting to arrest him for those felonies. See State v. Whitley, 183 S.W. 317, 320-21 (Mo.1916) (“But being guilty, and knowing his guilt thereof (as the inference is from the jury’s verdict), the duty was by law incumbent on him to submit to this arrest, under penalty, if he refused, of taking away his defense when tried for any act done by him while resisting arrest.”).
Not only was the evidence sufficient for the jury to find that Jones knew he had committed burglary, attempted robbery, and assault, but Jones also does not contest his convictions for those crimes. Because of the “traekbaek,” the evidence also was sufficient for the jury to find that, after committing these crimes and fleeing out the back of C.H.’s house, Jones ran directly into Officer Avery’s view. When this officer identified himself and told Jones to stop running, Jones Continued to flee. Finally, and most persuasively, Jones continued to flee Officer Avery even after that officer began chasing him. Given all of this, there was a sufficient basis for the jury to infer Jones knew — or reasonably should have known — that he was being arrested for the crimes he had just committed.[10]
For the foregoing reasons, the trial court did not err by overruling Jones’ motion ■ for judgment of acquittal on the charge of resisting arrest.

IV. Jones’ Motion for Continuance Was Properly Overruled

In his third point, Jones claims that the trial court abused its discretion by overruling his last-minute motion for a continuance on the eve of trial. The decision whether to grant a motion for continuance is committed to the sound discretion of the trial court,' and;' on appeal, this Court’s review is limited to whether the trial court abused that discretion. State v. Griffin, 848 S.W.2d 464, 468 (Mo. banc 1993). “Reversal is warranted only'upon a very strong showing that the court abused its discretion ■ and prejudice resulted.” State v. Edwards, 116 S.W.3d 511, 535 (Mo. banc 2003). “[T]he party requesting the continuance bear[s] the burden of showing prejudice.” State v. School, 806 S.W.2d 659, 666 (Mo. banc 1991).
Jones moved for a continuance on the morning of the day on which trial was set to begin. He claimed a delay was necessary for defense counsel: (1) to locate a potential defense witness and (2) to conduct a forensic examination of Jones’ cell phone and present expert testimony as to the results of that examination.[11] The trial court heard argument on Jones’ motion on the morning of the first day of trial. Noting its concerns that the case *112 was four years old, that neither of these issues was raised at the pretrial conference the. prior week, and that Jones already had sought and received continuances on four previous occasions, the trial court overruled the motion. Jones raised these issues in his motion for a new trial, preserving them for appellate review, and the trial court overruled that motion.
Last-minute motions for a continuance are not favored. In reviewing the overruling of such a. motion, this Court, has stated:
Under Rule 24.10, an application for continuance due to the absence of a witness must show: (1) the materiality of the evidence sought to be obtained and due diligence on the part of the applicant to obtain the witness; (2) the name and residence of the witness; (3) the facts that the .witness will prove and that there is no other person who could have been present at trial to testify to such facts; and (4) the application was made in good faith for the purpose of obtaining a fair and impartial trial.
State v. Salter, 250 S.W.3d .705, 712 (Mo. banc 2008). “In deciding whether to grant a continuance, the trial court is entitled, to consider whether the application meets the requirements of this rule.” Id. If the trial court finds that the application does not comply with the rule, the court’s decision to deny the continuance is not an abuse of discretion. Id.
Jones’ written motion did not meet the requirements of Rule 24.10 with respect to the witness. The motion merely stated that she lived in the neighborhood and that “at the time of the incident she saw an African-American man with dreadlocks waiting for a bus and that this man is the person responsible for the alleged crimes in this case.” The motion does not explain how the witness’ name came to light or why, in the exercise of due diligence, defense counsel could not have identified her and secured her testimony earlier. In addition, the testimony ascribed to the witness would not have been of material aid to Jones’ defense. Whether she saw a man in the area whom she thinks resembled Jones is not material, nor would it have served to impeach the testimony of the officers who testified only that that they saw no one else (i.e., the witness or this third person) in the vicinity. The officers did not testify — and could not have testified — who was or was not present beyond their sight and hearing.
The witness’ speculation that this third person, not Jones, “is the person responsible' for the alleged crimes in this case” was of no assistance to Jones’ defense because such speculation would not have been admissible, and the motion failed to state that she had the firsthand knowledge of the third party’s guilt and Jones’ innocence necessary to raise her testimony above mere speculation. See State v. Rousan, 961 S.W.2d 831, 848 (Mo. banc 1998) (“To be admissible, evidence that- another person had an opportunity or motive for committing the crime for which a defendant is being tried must tend to prove that the other person committed some act directly connecting him with the crime.”). Based on the sparse description and lack of explanation or foundation for the purported testimony! the trial court did not err in overruling .Jones’ motion on the ground that it failed to establish the witness would “be able to say anything that would be of any benefit to the defense[.]”[12]
*113 Jones’ motion for a continuance also claimed that a delay was necessary for defense counsel to obtain a forensic examination of his cell phone and secure an expert to testify that the “call log” about which Officer Avery testified failed to show that Jones had taken a call lasting several minutes “at or near” the time of the burglary. But the motion fails to allege that counsel exercised due diligence in attempting to obtain this evidence prior to the first day of trial. The motion alleged only that it would take counsel 45 days to secure this evidence,- but it does not establish that counsel previously lacked sufficient time or information to seek this evidence in time for trial. The fact that it was'Jones’ phone (and, therefore, that Jones was the best source of the role the phone might or might not play in his defense) suggests that-there was sufficient time and information to pursue this evidence if counsel deemed it helpful. Counsel was appointed approximately 90 days before trial,[13] or twice as long as -the 45 days allegedly needed to test the phone and prepare an expert. Because Jones’ motion and argument failed to comply with the requirement in Rule 24.10(a) that counsel show due' diligence, the trial court did not abuse its discretion in overruling Jones’ motion for a continuance. See State v. Christeson, 50 S.W.3d 251, 262 (Mo. banc 2001) (trial court does not abuse its discretion in overruling a motion .for a continuance when counsel had adequate time to prepare).[14]
Finally, Jones claims that the trial court abused its discretion in overruling the motion for a continuance because defense counsel had entered an appearance only three months before trial, because counsel was out of the country for a month during that period, and because counsel was preparing other defendants’ cases while also preparing for Jones’ trial. These arguments were not presented in Jones’ written motion for continuance or in Jones’ motion for a new trial. Accordingly, they are not properly before this Court, see Rule 78.07(a); State v. Davis, 348 S.W.3d 768, 769 (Mo. banc 2011) (issue raised for the first time on appeal is not preserved for appellate review), and Jones does not seek plain error review under Rule 30.20.
Even if Jones’ last arguments were properly before this Court, they would not justify reversal. He does not claim counsel’s absence from the country or his representation of other clients affected the outcome of the trial, nor does Jones offer any explanation as to how;, any of these facts (or, all of them combined) actually prejudiced him. As noted above, counsel had ample time and information to secure examination of Jones’ cell phone, and Jones, does not claim that defense counsel’s travels or other commitments had.any effect op.counsel’s ability to secure a potential witness’ testimony even assuming it would have been admissible. Accordingly, even if this claim had been *114 presented to the trial court, the trial court would not have abused its discretion in denying the motion for continuance on such grounds.

Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.
Breckenridge, C.J., Fischer, Stith and Russell, JJ., concur;
. Draper, J., concurs in part and dissents in part in separate opinion filed;
Teitelman, J., concurs in opinion of Draper, J.

.This appeal originally was briefed in the Missouri Court of Appeals, Eastern District. There, Jones raised a fourth point claiming that the trial court erred in allowing Officer Avery to testify that the "call log” on Jones' cell phone (that was taken from him at'the time of his arrest and to the search of which Jones had consented) showed three missed calls between 11:11 p.m. and 11:12 p.m. Jones did not include this claim in his points relied on in this Court, however. "Any material included in the court of appeals brief that is not included in the substitute brief is abandoned." Rule 83.08(b).

. Unless otherwise stated, all statutory references are to RSMo 2000.

. Even if a person enters a building or inhabitable structure lawfully, a burglary may still occur, Section 569.160.1 provides for two mutually exclusive scenarios, i.e., that a person commits first-degree burglary if he "enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime there- • in — " [Emphasis added.] See § 569.010(8) (defining the phrase "Enter unlawfully or remain unlawfully” to .mean that "enters or remains in or upon premises when he or she *106 is not licensed or privileged to do so") (emphasis added). As a result, even though a person may be licensed or privileged to enter, he commits burglary if — knowing that the privilege or license no longer exists — he remains for the purpose of committing a crime. This language is omitted above and not considered in the Court’s analysis, however, because this not how Jones was charged or convicted here.

. "By" means "through the means or instrumentality of,” "through the direct agency of,” or “through the medium of.” WEBSTER’S THIRD NEW INTERNATIONAL DICTIONARY 307 (3d ed.1993). "With” means "by means of” or "by the use or agency of.” Id. at 2626. "Through” also means "by means of” or "by the use or agency of.” Id. at 2384.

. • The dissent notes, properly, that the elements for,: burglary were complete upon Jones’ entry into the garage. See State v. Pigques, 310 S.W.2d 942, 945 (Mo.1958). ■ The question here is whether he made that entry with the aid or assistance of his gun. The evidence .was sufficient to prove he did.

. See also Obasogie v. State, 457 S.W.3d 793, 798 (Mo.App.2014) (holding "there was an implicit threat to [the victim] by [defendant’s] display of the gun in his hand; he did not need to point the gun at her or to make an explicit verbal threat” to be found guilty of armed criminal action in connection with a burglary). Even though Obasogie rejects the construction of section 571.015.1 in Carpenter, the court similarly misconstrued this statute by concluding that the victim must see the defendant brandishing the weapon as he crosses the threshold. As explained herein, nothing in section 571.015.1 suggests that a defendant cannot unlawfully enter a dwelling with the "assistance” or "aid” of a weapon without actively brandishing it, nor is there any language in the statute to support a requirement that the victim actually must see the defendant enter with such "assistance” or "aid,”

. This holding is not in conflict with State v. Reynolds, 819 S.W.2d 322, 329 (Mo. banc 1991), which held that mere intention to use a we.apon, without actual use, is not enough to convict under the armed criminal action statute. There, the Court found there was "no evidence that Reynolds committed the burglary by, with, or through the use of the knife or other deadly weapon" because the defendant’s knife was not readily accessible. Id. Instead, throughout the burglary, the defendant’s knife was in a sheaf and "hooked inside the boot.” Id. at 327. Unlike the present case, therefore, the jury in Reynolds had no basis to infer that the knife was readily accessible such that it provided the defendant with "aid or assistance” in making the entry.

. When this case was briefed in the court of appeals, Jones also argued in his point relied on that there was insufficient evidence to prove that Officer Avery was attempting to make an arrest when-he told Jones to stop running.-In his substitute brief filed with this *110 Court, however, Jones drops this argument, and the claim is abandoned. Rule 83.08(b). Jones now expressly concedes that the evidence was sufficient for the jury to find that Officer Avery ordered him to stop intending to arrest him for the felonies he had just committed.

. At times, Jones’ argument on this point appears to challenge the, legality of his arrest in that he claims Officer Avery could not have had probable cause to arrest him at the time he did and, at most, could only have had reasonable suspicion to stop Jones and make further inquiries. But Jones cannot challenge the lawfulness of the arrest as a defense to a charge of resisting arrest. § 575,150.4. Because Jones concedes that Officér Avery was, in fact, attempting to arrest him, the relevant point is whether Jones knew or had reason to know that this is what was occurring.

. In support of his argument that he did not know he was under arrest, Jones relies on State v. Hunter, 179 S.W.3d 317, 321 (Mo.App.2005). In Hunter, the defendant was a passenger in a pickup. When the driver ran through a red light, a police officer behind him activated the lights on his patrol car and pursued the vehicle. Though the driver had reason to know he was being stopped, Hunter holds that the passenger had no reason to know he was being arrested for a felony unrelated to the traffic offense just committed. Id. More importantly, Hunter notes that the officer never testified he intended to arrest the defendant. Id. Here, Officer Avery testified that he ordered Jones to stop and chased after him intending to arrest him for the felonies he had just committed, and Jones concedes this point. Hunter, therefore, is distinguishable from the present case and does not support Jones' argument.

. In his. motion for continuance, Jones also argued that the court should grant a delay to give defense counsel more time to investigate Jones’ mental health. Jones has abandoned this claim on appeal, however, and it is not before the Court.

. Jones provided-greater detail regarding the witness’ potential testimony in his motion for new trial, but none of the new information showed that her testimony would contradict the officers’ testimony directly on any meaningful issue, nor did any of these new details • demonstrate that the witness could link the *113 third party to the crime and not just to the neighborhood.

. Jone’s first counsel was appointed in 2010, shortly after he was charged. This counsel was allowed to withdraw and another counsel appointed following Jones' nine pro se motions for change of counsel.

. Jones’ motion for-continuance also fails to establish that the forensic examination and expert testimony concerning the "call log" on his phone — even if it turned out as Jones hoped — would aid his defense materially. Evidence that Jones answered a phone call lasting several minutes "at or near” the time of the crime does not contradict M.H.'s testimony that Jones missed a call during their struggle or contradict Officer Avery's testimony that the "call log" shows Jones missed three calls in rapid succession at 11:1-1 p.m. and 11:12 p.m.