

# In the Missouri Court of Appeals
## Eastern District
### DIVISION ONE

| | | |
|---|---|---|
| OMORUYI OBASOGIE, | ) | No. ED100784 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | |
| STATE OF MISSOURI, | ) | Hon. Robert S. Cohen |
| | ) | |
| Respondent. | ) | FILED: December 2, 2014 |

Omoruyi Obasogie ("Movant") appeals from the judgment of the motion court that denied his motion for post-conviction relief after an evidentiary hearing. Finding no error, we affirm.

At about 1:00 a.m. on November 2, 2009, Movant, Anwar Randle, and an unidentified man broke into a home occupied by Cameron Bass and Kena Coleman, who were asleep at the time. Both Bass and Coleman knew Randle but did not know Movant or the third man. Bass and Coleman awoke, and Coleman went into the hallway to investigate while Bass hid in the bedroom closet. Coleman first saw Randle coming out of a bedroom door. The lights were on in the laundry room and in the kitchen. Coleman then saw Movant and the third man, armed with a small handgun and a shotgun respectively, enter her home through the back door. She screamed at them to get out of her house. Randle shoved Movant into her bedroom. Movant and Randle then entered the bedroom looking for Bass. Movant pointed the handgun at Bass and told him to get out of the closet. Movant fired the gun but struck no one. Bass fled through the closet into

an adjacent bedroom. Randle and the unidentified man pursued him and beat him with the butt of a shotgun and a glass bottle. Eventually, the three intruders left.

Bass then called the police. The resulting police dispatch stated that three black males had entered a residence and shots had been fired. A St. Louis County police officer observed three black males, Movant and the other two intruders, driving in the area. The officer initiated a traffic stop on the vehicle. Movant, who was driving the car, pulled over, and the unidentified man exited and fled on foot. Movant and Randle remained in the car and sped away at high speed. They were later apprehended by multiple police officers in a parking lot.

Movant was charged with burglary in the first degree (Count I), assault in the first degree (Count III), and two counts of armed criminal action associated with the other felonies (Counts II and IV). At trial, the State cross-examined Movant regarding his prior convictions. Movant's counsel objected to the State's examination on this point. After a sidebar discussion, the court asked the prosecutor to stop questioning Movant about the convictions, to which the prosecutor agreed. At closing argument, the State made two points, among others. First, as to the unnamed third perpetrator who escaped arrest, the State argued that Movant or his counsel knew Randle's current residence, and that Randle knew the identity of the third perpetrator. Second, the State asked the jurors to determine whose testimony had been truthful: that of Coleman and Bass or, rather, Movant. The jury convicted him of burglary in the first degree, assault in the second degree, and two counts of armed criminal action. Movant was sentenced to three 12-year sentences and one 7-year sentence, all to be served concurrently.

Movant appealed, asserting four points of error. This Court affirmed Movant's convictions in State v. Obasogie, 370 S.W.3d 888 (Mo. App. 2012). Movant timely filed a motion for post-conviction relief pursuant to Rule 29.15, subsequently amended by appointed

counsel. Chief among Movant's allegations was that appellate counsel was ineffective for failing to assert a claim of insufficiency of the evidence regarding Count II, the armed criminal action count associated with Count I, burglary in the first degree..

The motion court held an evidentiary hearing on May 25, 2013, after having issued writs of *habeas corpus* for Movant and Randle to be present at the hearing. The Missouri Department of Corrections apparently misread one of the writs, thinking that the motion court had issued two writs for Movant instead of one each for Movant and Randle, and failed to deliver Randle. Movant requested a continuance of the hearing on this basis, which the motion court denied, noting that most of the claims had nothing to do with Randle and that it would bring him in if any of the claims required his presence to resolve. Movant's trial counsel, appellate counsel, Movant, and Movant's mother each testified at the hearing. The motion court denied Movant's amended motion for post-conviction relief and made findings of fact and conclusions of law.

The motion court found that the cases relied on by Movant in support of his contention that appellate counsel was ineffective for failing to assert a claim of insufficiency of the evidence on direct appeal were distinguishable. It noted that in the cases cited by Movant that the defendants had entered the homes unseen by the victims and were already inside the houses when it was discovered that they were armed with weapons. It found that in the present case, in contrast, Coleman saw Movant and the third man both armed with firearms when they entered her house through the back door, and that Movant used that same gun to assault Bass in the bedroom. The motion court found that Coleman's testimony was sufficient to support Count II and found that appellate counsel was not ineffective for failing to assert this claim on direct appeal.

3

Regarding Movant's other claims of ineffective assistance of trial counsel, the motion court found that trial counsel's decision not to submit a lesser-included offense for assault in the third degree was reasonable trial strategy, as there was no basis for such an instruction. It also found that Movant was not credible regarding his testimony that he gave Randle's contact information to trial counsel or that trial counsel never told him that he had the right not to testify and that his prior convictions could be introduced if he did testify. The motion court both explicitly and implicitly found trial counsel's testimony on these issues to be credible. It concluded that Movant was provided effective assistance of counsel, that he was not denied rights under the U.S. Constitution or the Missouri Constitution, and that he failed to establish any basis to have his sentence vacated, set aside, or corrected. Movant now appeals from this judgment.

Our review of the motion court's denial of post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); Helmig v. State, 42 S.W.3d 658, 665-66 (Mo. App. 2001). Findings and conclusions are clearly erroneous only if, after a review of the record, we are left with a definite and firm impression that a mistake was made. Id.

To prove ineffective assistance of counsel, Movant must demonstrate by a preponderance of the evidence that: (1) counsel's performance failed to conform to the degree of skill, care and diligence of a reasonably competent attorney under similar circumstances, and (2) Movant was prejudiced by counsel's poor performance. Deck v. State, 68 S.W.3d 418, 425 (Mo. banc 2002), citing Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the first prong of the Strickland test, Movant must overcome a presumption that the challenged action constituted sound trial strategy. State v. Hall, 982 S.W.2d 675, 680 (Mo. banc 1998). The second

4

Strickland prong necessitates that Movant "show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Deck v. State, 68 S.W.3d 418, 429 (Mo. 2002). If Movant fails to prove either prong of the Strickland test, we need not consider the remaining prong. Buckner v. State, 35 S.W.3d 417, 420 (Mo. App. 2000).

In his first point relied on Movant contends that the motion court clearly erred in denying his amended motion for post-conviction relief because he proved by a preponderance of the evidence that he was denied his constitutional rights to due process of law and effective assistance of counsel. He avers that appellate counsel was ineffective for failing to assert on direct appeal that the trial court erred in overruling his motion for judgment of acquittal at the close of all evidence as to Count II on the grounds that the State failed to make a submissible case and that there was insufficient evidence from which a reasonable jury could find him guilty. But for this alleged error, Movant claims that there is a reasonable probability that the outcome of his direct appeal would have been different.

To prevail on a claim of ineffective assistance of appellate counsel, a movant must establish that the appellate counsel failed to assert a claim of error that was so obvious that a reasonably competent attorney would have perceived the error and asserted it. Tisius v. State, 183 S.W.3d 207, 215 (Mo. banc 2006). The purported error must have been sufficiently serious so as to produce a reasonable probability that if it had been raised, the outcome of the appeal would have been different. Id. The movant must overcome the presumption that, under the circumstances, the challenged action could be considered sound strategy. Holman v. State, 88 S.W.3d 105, 110 (Mo. App. 2002). Appellate counsel has no obligation to assert every issue

5

raised in the motion for a new trial he makes the strategic decision to drop some arguments in favor of others.  Id.

Appellate counsel testified at the evidentiary hearing that he should have raised the issue of insufficiency of evidence regarding Count II on direct appeal, and that he did not have a strategic reason for not asserting it, but rather that it seemed that he "just missed the insufficiency in that claim."  Appellate counsel further testified that he believed that the outcome of the direct appeal would have been different if he had raised the insufficiency claim as to Count II.  He also testified that this was manifestly prejudicial to Movant even though all of his sentences were concurrent.  Appellate counsel testified he thought that the evidence showed when Coleman first saw "the assailants" that they were already in the house, either inside the kitchen or inside the hallway.  He further stated that if someone were seen illegally entering a building, it would be burglary and that if anyone in that building saw them enter the building holding a firearm in their hand that this might be sufficient to support a charge of armed criminal action.

At Movant's trial, Coleman testified as follows:

State:  Now, you saw Mr. Randle coming out of the bedroom door here.  What else did you see?

Coleman:  I saw [Movant] and another guy with dreads come into the back door.

…

State:  And did you see anything in anybody's hand?

Coleman:  Yes.

State:  And what was that?

Coleman:  [Movant] had a small handgun, and the guy with the dreads had a shotgun.

6

In other words, there was evidence that a person in the house, Coleman, saw Movant armed with a weapon prior to entering the house.

Movant argues that the motion court was incorrect in finding the present case to be distinguishable from State v. Carpenter, 109 S.W.3d 718 (Mo. App. 2003) and State v. Dudley, 51 S.W.3d 44 (Mo. App. 2001), cases that he relied on in his amended motion. In both of those cases, the defendants were already present in the house when they were first seen by anyone in the house. As the testimony above indicates, Coleman saw Movant and the other unknown defendant, weapons in hand, as they entered her house. Movant asserts that in order to be convicted for armed criminal action in this circumstance, he or the unidentified third man would have had to shoot the back door open or explicitly threaten Coleman by words or by pointing a gun at her. In support of this assertion, Movant relies on dicta in Carpenter, 109 S.W.3d at 723, wherein the appellate court opined that the synergistic effect of combining section 569.160.1(3) and section 571.015 was to require that a defendant had to use the weapon to break open the door or to point the weapon at someone in the house and explicitly threaten him or her to compel that person to open the door in order to sustain a conviction for armed criminal action based on first degree burglary under section 569.160.1(3).[1]

Under the language of the statutes on burglary and armed criminal action, as charged in Carpenter, Dudley and in the present case, a defendant must have gained entry "by, with, or through the use, assistance, or aid of" the weapon to sustain the armed criminal action count.[2] In both Dudley and Carpenter, the respective defendants did not use the weapon to break open a door or a window, and they were both inside the house when first seen by the victims; hence they did not use the weapon to intimidate someone prior to entering the home. Accordingly, the

---

[1] All statutory citations are to RSMo. 2000.
[2] Specifically, the defendants in all three cases were charged with first degree burglary under section 569.160.1(3).

Carpenter court held that defendants in those cases did not gain entry "by, with, or through the use, assistance or aid of" the weapon at issue. The dicta in Carpenter that defendant would have had to use the gun to break open the door or to display a weapon and explicitly threaten someone to gain entry, was not required by the language of the statute and was not necessary to reach its holding in that case.

In the present case, Movant was openly displaying the gun in his hand as Coleman saw him enter her house. The jury could reasonably infer that there was an implicit threat to Coleman by Movant's display of the gun in his hand; he did not need to point the gun at her or to make an explicit verbal threat. There was sufficient evidence to sustain the conviction for armed criminal action, Count II, associated with the burglary count. Accordingly, appellate counsel was not ineffective for failing to assert an issue without merit. Point denied.

We will address Movant's second and third points relied on together. In his second point relied on Movant argues that the motion court clearly erred by denying him a full evidentiary hearing by refusing to allow Movant to present Randle's testimony, which effectively denied his claim that trial counsel was ineffective for failing to investigate and call Randle to testify at Movant's trial, thereby denying him his constitutional rights to due process of law. He avers that he pleaded facts, not conclusions, which were not refuted by the record which, if true, would entitle him to relief. In his third point relied on, asserted in the alternative to his second point relied on, Movant claims that the motion court clearly erred in denying his motion for post-conviction relief because a review of the record leaves a definite and firm impression that he was denied effective assistance of counsel. Movant alleges that trial counsel was ineffective in failing to investigate Randle at all and by failing to call him at trial, since Movant alleged that Randle would have testified that Movant never left the car, never entered Coleman's residence,

8

never encountered Coleman or Bass, never possessed a firearm, and was totally innocent of the charges.

Appellate courts defer to "'the motion court's superior opportunity to judge the credibility of witnesses.'" Barton v. State, 432 S.W.3d 741, 760 (Mo. banc 2014) (quoting State v. Tventer, 818 S.W.2d 628, 635 (Mo. banc 1991)). The motion court was free to believe or disbelieve any evidence, including testimony, whether undisputed or contradicted. Rios v. State, 368 S.W.3d 301, 317 (Mo. App. 2012).

Movant's trial counsel testified at the evidentiary hearing. He testified that Movant said he would provide him with Randle's contact information in Chicago, but Movant never gave him that information. Trial counsel stated that he asked Movant several times for Randle's contact information, "but he never gave us a phone number or address or any way to find him in Chicago." Trial counsel said that a day or so before trial, Movant gave him a purported affidavit from Randle regarding Movant's innocence of the charges. He testified that he remembered seeing it, but that it was of no use to Movant because it was inadmissible hearsay. Trial counsel stated that he shared Randle's "affidavit" with the State, which replied that it was hearsay. Trial counsel repeated that he had no way to contact Randle, that Movant did not have a phone number or address for Randle, and told trial counsel "on numerous occasions" that he would get Randle for him, but did not. The trial court found trial counsel to be credible. It found Movant's testimony that he gave accurate contact information for Randle to trial counsel to be not credible. The motion court, which also presided over Randle's trial, noted that it was not credible that Randle would have testified at Movant's trial given that Randle "jumped bond" in his own case and had bondsmen's agents and police officers actively searching for him, and "was completely

9

unavailable to everybody" including the court, and "[n]obody could reasonabl[y] think otherwise."

The motion court did not clearly err in denying Movant's claim for post-conviction relief that trial counsel was ineffective for failing to investigate Randle and to call him as a witness, nor did the motion court clearly err or abuse its discretion in not continuing the evidentiary hearing to obtain Randle's testimony. Randle's testimony was not necessary for the motion court to rule on Movant's amended motion for post-conviction relief. The motion court found trial counsel credible that Movant failed to provide him with Randle's contact information, which clearly refutes Movant's allegations. It explicitly found Movant to be not credible. Based on the record before the motion court, the motion court could reasonably conclude that Randle would not have testified at trial, rendering his proposed testimony irrelevant. Movant clearly is not entitled to relief, and appellate courts will not order a useless remand in such a circumstance. Ervin v. State, 80 S.W.3d 817, 825-26 (Mo. banc 2002). Points denied.

The judgment of the motion court is affirmed.

_____
CLIFFORD H. AHRENS, Judge

Lawrence E. Mooney, P.J., concurs.
Glenn A. Norton, J., concurs.