

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,            )
                                     )
                Respondent,    )
                                     )
v.                                    )    No. SC94924
                                     )
JUSTIN FLOYD EUGENE JONES,    )
                                     )
                 Appellant.    )

### APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
The Honorable Michael D. Burton, Judge

### *Opinion issued January 26, 2016*

Justin Jones appeals the judgment of the St. Louis County Circuit Court, entered after a jury trial, convicting him of, and sentencing him for, one count of burglary in the first degree and an associated count of armed criminal action, one count of attempted robbery in the first degree and an associated count of armed criminal action, one count of assault in the third degree, and one count of resisting arrest for a felony. On appeal, Jones claims that the trial court erred by: (1) overruling his motion for judgment of acquittal on the armed criminal action charge associated with his burglary conviction; (2) overruling his motion for judgment of acquittal on the resisting arrest charge; and (3) overruling his motion for a continuance. The judgment is affirmed.

## *Background*

The evidence at trial supported the following findings and inferences beyond a reasonable doubt. On February 10, 2010, C.H. returned to her home from grocery shopping shortly after 11 p.m. She drove her vehicle into the driveway, parked, and went inside the home through the front door to ask for help in unloading the groceries. C.H. then walked back outside, opened the automatic garage door, and backed her car into the attached garage. She got out of the car, grabbed a few bags of groceries, and walked toward the interior door between the garage and the house. There, C.H. pressed a keypad to lower the garage door and, as the door began to lower, turned to go through the doorway and into her house. Before she could enter her home, however, C.H. heard the garage door stop and start to go back up, which it was programmed to do if the threshold sensors were triggered. C.H. turned toward the garage door when she heard it start to go back up and saw Jones coming into the garage and holding out a black gun in both hands. C.H. ran into the house, slamming the door behind her, and went into the nearest bedroom, where she activated her home alarm and called the police.

M.H., one of C.H.'s sons, was in the kitchen doing dishes when this occurred. Hearing the interior door to the garage open, slam shut, and open again, M.H. turned toward that door and saw Jones pointing a gun at him. Jones told M.H. to come over to him and, when he did, Jones put M.H. in a "headlock" and repeatedly demanded "dope, money, and weed." When M.H. told Jones he did not have any, Jones pushed M.H. toward the back door. M.H. told Jones he did not want to leave, so Jones began to push him through the house toward the interior door to the garage. On the way, Jones' cell

phone rang. Jones let go of M.H. to try to answer his phone, and M.H. grabbed Jones' gun. Jones abandoned his effort to answer his cell phone and began to struggle with M.H. to regain control of the gun. When Jones bit M.H.'s jaw and tried to gouge out his eyes, M.H. was forced to relinquish his hold on Jones' gun. Having regained control of his gun, Jones pointed it at M.H. for a moment and then fled out the back door of the home without firing a shot. The police arrived shortly thereafter, and M.H. pointed them in the direction Jones had fled.

Officer Virgil Avery was on patrol at the time these crimes occurred. When he received the dispatch regarding the incident and a description of the perpetrator, he responded to the area to set up containment. Officer Avery drove to a subdivision that was located directly behind C.H.'s home and separated from that house only by a wood fence. Within seconds of exiting his vehicle, Officer Avery saw Jones running from the direction of C.H.'s house. Jones matched the description of the perpetrator that Officer Avery had just received. Officer Avery identified himself as a police officer and told Jones to stop running. Jones looked at the officer but continued to run away. Officer Avery gave chase, and Jones continued to flee. After approximately 15 seconds, Officer Avery caught Jones from behind, placed him in handcuffs, and arrested him immediately for the robbery attempted in C.H.'s home.

After Officer Avery detained Jones, Officer Robert Dean and Lass, his K-9 partner, performed a "trackback" from the location where Jones was arrested. The track led to the back door of C.H.'s home. Officer Kathryn Mumford then performed a "victim showup," meaning she picked M.H. up from his house, told him that the police had found

3

someone that they would like him to see, and drove M.H. to where Jones was located. When Officer Mumford asked M.H. if he had seen Jones before, M.H. identified Jones as the individual who had just assaulted him in his home.

Jones was charged with one count of burglary in the first degree and an associated count of armed criminal action, one count of attempted robbery in the first degree with a separate associated count of armed criminal action, one count of assault in the third degree, and one count of resisting arrest for a felony. With respect to the first-degree burglary charge, the state alleged that Jones "knowingly entered unlawfully in an inhabitable structure … possessed by [C.H.] …, for the purpose of committing Robbery in the First Degree therein, and while in such inhabitable structure there was present in such inhabitable structure [C.H. and M.H.], persons who were not participants in the crime." The associated armed criminal action count alleged that Jones committed the felony of first-degree burglary "by, with and through, the knowing use, assistance and aid of a deadly weapon." With respect to the resisting arrest charge, the indictment alleged that Jones resisted arrest "by fleeing" from an officer.

At the close of the state's case at trial, Jones moved for a judgment of acquittal. He argued that there was insufficient evidence to support the charge for armed criminal action associated with the first-degree burglary charge because there was no evidence that he actually "used" the gun to effect entry into C.H.'s garage or that he "used" the gun to intimidate C.H. into granting him entry. Jones also contended that there was insufficient evidence to support the charge for resisting arrest because there was no evidence showing

4

that he ran from the officer after the arrest occurred or was attempted. The trial court overruled the motion.

Jones did not present any evidence on his own behalf, and the jury found him guilty on all counts. Jones filed a motion for judgment of acquittal or, in the alternative, a new trial, which the trial court overruled. The trial court entered a judgment and sentences consistent with the jury's verdicts. Jones now appeals, and this Court has jurisdiction under article V, section 10, of the Missouri Constitution.

*Analysis*

Jones raises three points on appeal.[1] His first and second points challenge the sufficiency of the evidence to support his conviction for armed criminal action in connection with the first-degree burglary and his conviction for resisting arrest. Jones' third point claims that the trial court erred by overruling his motion for a continuance.

## I. Standard of Review

When reviewing a challenge to the sufficiency of the evidence, the standard of review is "whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Letica*, 356 S.W.3d 157, 166 (Mo. banc 2011). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences

---

[1] This appeal originally was briefed in the Missouri Court of Appeals, Eastern District. There, Jones raised a fourth point claiming that the trial court erred in allowing Officer Avery to testify that the "call log" on Jones' cell phone (that was taken from him at the time of his arrest and to the search of which Jones had consented) showed three missed calls between 11:11 p.m. and 11:12 p.m. Jones did not include this claim in his points relied on in this Court, however. "Any

5

contrary to the verdict." *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). "This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." *State v. Miller*, 372 S.W.3d 455, 463 (Mo. banc 2012). In reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court "does not act as a 'super juror' with veto powers" but "gives great deference to the trier of fact." *Id.*

## II. *Jones committed the burglary with the aid and assistance of a gun*

A "person commits the crime of burglary in the first degree if he knowingly enters unlawfully … a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom," § 569.160.1, [2] and "[t]here is present in the structure another person who is not a participant in the crime," § 569.160.1(3). [3] A person commits armed criminal action when he or she "commits any felony under the laws of this state by, with,

---

material included in the court of appeals brief that is not included in the substitute brief is abandoned." Rule 83.08(b).

[2] Unless otherwise stated, all statutory references are to RSMo 2000.

[3] Even if a person enters a building or inhabitable structure lawfully, a burglary may still occur. Section 590.160.1 provides for two mutually exclusive scenarios, i.e., that a person commits first-degree burglary if he "enters unlawfully *or knowingly remains unlawfully* in a building or inhabitable structure for the purpose of committing a crime therein …." [Emphasis added.] *See* § 569.010(8) (defining the phrase "Enter unlawfully or remain unlawfully" to mean that "enters *or remains* in or upon premises when he or she is not licensed or privileged to do so") (emphasis added). As a result, even though a person may be licensed or privileged to enter, he commits burglary if – knowing that the privilege or license no longer exists – he remains for the purpose

6

or through the use, assistance, or aid of a dangerous instrument or deadly weapon."
§ 571.015.1.

In his first point, Jones argues that he cannot be guilty of armed criminal action because there was no evidence that he made "use" of the gun to overcome a physical obstacle in order to enter the garage in that the garage door automatically opened when his foot or leg triggered the sensor at the threshold of the garage. Nor, Jones argues, was the evidence sufficient for the jury to find that he made "use" of his gun to intimidate C.H. into granting him entry because C.H. did not see Jones with the gun until after he had crossed the threshold of the garage. Because Jones contends these are the only means by which the state can convict him of armed criminal action in connection with this burglary, he maintains he must be acquitted as a matter of law. The Court rejects this argument and holds that the evidence was sufficient to support Jones' conviction for armed criminal action in connection with the first-degree burglary.

Jones' argument reads section 571.015 as though it limits armed criminal action solely to circumstances in which the defendant "uses a dangerous instrument or deadly weapon to commit any felony under the laws of this state." But this is not how the statute reads, and construing section 571.015 so narrowly ignores the other terms the legislature chose to include in that statute.

"This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Ivie v. Smith*, 439 S.W.3d

---

of committing a crime. This language is omitted above and not considered in the Court's analysis, however, because this not how Jones was charged or convicted here.

189, 202 (Mo. banc 2014) (quoting *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009)) (internal quotation marks omitted).  "It is a basic rule of statutory construction that words should be given their plain and ordinary meaning whenever possible."  *State ex rel. Jackson v. Dolan*, 398 S.W.3d 472, 479 (Mo. banc 2013) (quoting *Spradlin v. City of Fulton*, 982 S.W.2d 255, 258 (Mo. banc 1998)) (internal quotation marks omitted).

Jones' argument places great emphasis on the word "use" but ignores all of the other words the legislature used when enacting section 571.015.  "When interpreting a statute, this Court must give meaning to every word or phrase of the legislative enactment."  *State v. Moore*, 303 S.W.3d 515, 520 (Mo. banc 2010).  The statute reads:

> [A]ny person who commits any felony under the laws of this state *by, with, or through* the *use, assistance, or aid* of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action ….

§ 571.015.1 (emphasis added).  These three prepositions (by, with, or through) and the three nouns those prepositions modify (use, assistance, or aid), demonstrate that section 571.015.1 was intended to reach as broadly as possible.  Accordingly, the statute provides that Jones is guilty of armed criminal action under this statute in connection with the burglary if the evidence was sufficient for the jury to find beyond a reasonable doubt *any one* of at least the following nine permutations:

> He committed this unlawful entry for the purpose of committing a felony *by* the *use* of his gun.

> He committed this unlawful entry for the purpose of committing a felony *by* the *assistance* of his gun.

8

He committed this unlawful entry for the purpose of committing a felony *by* the *aid* of his gun.

He committed this unlawful entry for the purpose of committing a felony *with* the *use* of his gun.

He committed this unlawful entry for the purpose of committing a felony *with* the *assistance* of his gun.

He committed this unlawful entry for the purpose of committing a felony *with* the *aid* of his gun.

He committed this unlawful entry for the purpose of committing a felony *through* the *use* of his gun.

He committed this unlawful entry for the purpose of committing a felony *through* the *aid* of his gun.

He committed this unlawful entry for the purpose of committing a felony *through* the *assistance* of his gun.

The legislature did not define the words "by," "through," "with," "use," "aid," or "assistance" for purposes of section 571.015 but, in "the absence of a statutory definition, words will be given their plain and ordinary meaning as derived from the dictionary." *State v. Oliver*, 293 S.W.3d 437, 446 (Mo. banc 2009). The prepositions "by," "through," and "with" are defined as function words used to indicate the means, agency, or instrumentality of something else.[4] "Use" means "the act or practice of employing something." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2523 (3d ed. 1993).

---

[4] "By" means "through the means or instrumentality of," "through the direct agency of," or "through the medium of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 307 (3d ed. 1993). "With" means "by means of" or "by the use or agency of." *Id.* at 2626. "Through" also means "by means of" or "by the use or agency of." *Id.* at 2384.

9

A person may walk with the "use" of a cane, but doing so does not necessarily mean that the person could not walk without it. By the same token, given the context of section 571.015, the noun "use" does not mean or suggest that the weapon must have been necessary to commit the crime or that – but for the defendant's "use" of the weapon – the crime could not have occurred.

Moreover, even if the definition of "use" did not encompass Jones' conduct in this case, it is clear that the terms "assistance" and "aid" reach even further. "Aid" refers to "the help given," and "assistance" refers to "the help supplied or given." *Id.* at 44, 132. Neither of these terms suggests that the help provided by, through, or with the weapon must have been essential to the commission of the crime or that, but for that help, the crime could not have occurred. Instead, the terms "aid" and "assistance" suggest the opposite. This construction is further strengthened and compelled by the fact that the nouns "aid" and "assistance" are included as alternatives to the noun "use."

Accordingly, and without belaboring the applicability of all nine permutations of section 571.015.1, there was sufficient evidence for the jury to find beyond a reasonable doubt that Jones committed first-degree burglary ***with*** the ***assistance*** or ***aid*** of his gun. C.H. testified that she saw Jones immediately after he crossed the threshold of the garage. Even though C.H. did not see Jones at the precise moment he crossed the threshold of the garage, she did see Jones an instant later and – at that time – Jones already was holding his gun out in both hands and pointing it at C.H. As a result, the evidence was sufficient for the jury to find that Jones crossed the threshold of the garage with the aid or

10

assistance of his gun regardless of whether Jones first broke the plane of the garage's entrance with his gun, foot or knee.[5]

In support of his argument, Jones cites two decisions from the court of appeals that he claims require the state to prove that the defendant made "use" of a weapon either to overcome a barrier to entry (e.g., break a window or open a door) or to threaten someone into granting entry before the defendant can be convicted of armed criminal action in connection with a burglary. *See State v. Hopkins*, 140 S.W.3d 143 (Mo. App. 2004) (to be convicted of armed criminal action in connection with a burglary, the evidence must show that the defendant used the knife to pry open the door or explicitly threaten the victim prior to entry); *State v. Carpenter*, 109 S.W.3d 718, 723 (Mo. App. 2003) (a defendant does not commit burglary by, with, or through the use, aid, or assistance of a gun unless the defendant shoots the door open or explicitly threatens the victim with the gun to compel the victim to open the door).[6] This is incorrect.

---

[5]   The dissent notes, properly, that the elements for burglary were complete upon Jones' entry into the garage. *See State v. Pigques*, 310 S.W.2d 942, 945 (Mo. 1958). The question here is whether he made that entry with the aid or assistance of his gun. The evidence was sufficient to prove he did.

[6]   *See also Obasogie v. State*, 457 S.W.3d 793, 798 (Mo. App. 2014) (holding "there was an implicit threat to [the victim] by [defendant's] display of the gun in his hand; he did not need to point the gun at her or to make an explicit verbal threat" to be found guilty of armed criminal action in connection with a burglary). Even though *Obasogie* rejects the construction of section 571.015.1 in *Carpenter*, the court similarly misconstrued this statute by concluding that the victim must see the defendant brandishing the weapon as he crosses the threshold. As explained herein, nothing in section 571.015.1 suggests that a defendant cannot unlawfully enter a dwelling with the "assistance" or "aid" of a weapon without actively brandishing it, nor is there any language in the statute to support a requirement that the victim actually must see the defendant enter with such "assistance" or "aid."

11

Armed criminal action under section 571.015.1 does not require that the defendant actually attack or threaten an imminent attack with the weapon. It only requires that the defendant commit a crime "by, through, or with" the "use, assistance, or aid" of a weapon. In connection with a charge of burglary, therefore, section 571.015.1 does not require that the weapon must have been the means of forcing entry, either directly or indirectly through intimidation. Such might be a reasonable construction of the term "use" if it were the only term used in the statute, but "use" is just one of three alternatives describing the conduct prohibited by section 571.015.1. The addition of the words "assistance" and "aid" broaden the reach of the armed criminal action statute to any crime committed with the help of a weapon, not merely to those crimes that necessarily resulted only from the use of a weapon.

The plain meaning of "assistance" and "aid," especially when considered in light of the alternative prepositions "by, through, or with," make it clear that the legislature intended section 571.015.1 to reach as far as possible and to discourage defendants from arming themselves during the commission of felonies by imposing a separate punishment when the defendant's criminal purpose is assisted or aided by ready access to a dangerous weapon. Any other construction of section 571.015.1 robs the words "assistance" and "aid" of any meaning in defining "armed criminal action."

Here, Jones unlawfully entered C.H.'s garage with a gun in his hands. The jury reasonably could infer that the gun "aided" or "assisted" Jones by bolstering his confidence to enter a garage that he knew might be occupied. The weapon provided "aid" or "assistance" by giving Jones both the ready means to overcome any resistance

12

and the assurance that the mere presence of the gun would prevent or deter such resistance in the first instance. It does not matter whether such resistance occurs, or even whether anyone who might have offered such resistance actually saw him cross the threshold. The jury reasonably could infer that Jones crossed that threshold with the "aid" or "assistance" of his gun because the gun bolstered Jones' confidence in making the unlawful entry. Accordingly, the evidence was sufficient for a jury to find beyond a reasonable doubt that Jones committed armed criminal action in connection with the first-degree burglary.[7]

### III. Jones Reasonably Should Have Known He Was Under Arrest.

In his second point, Jones claims that the evidence was not sufficient to support his conviction for resisting arrest. Section 575.150.1, RSMo Supp. 2010, provides:

> A person commits the crime of resisting or interfering with arrest, detention, or stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual or vehicle, or the person reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual or vehicle, for the purpose of preventing the officer from effecting the arrest, stop or detention, the person:
>
> (1) Resists the arrest, stop or detention of such person by using or threatening the use of violence or physical force or by fleeing from such officer; or

---

[7] This holding is not in conflict with *State v. Reynolds*, 819 S.W.2d 322, 329 (Mo. banc 1991), which held that mere intention to use a weapon, without actual use, is not enough to convict under the armed criminal action statute. There, the Court found there was "no evidence that Reynolds committed the burglary by, with, or through the use of the knife or other deadly weapon" because the defendant's knife was not readily accessible. *Id.* Instead, throughout the burglary, the defendant's knife was in a sheaf and "hooked inside the boot." *Id.* at 327. Unlike the present case, therefore, the jury in *Reynolds* had no basis to infer that the knife was readily accessible such that it provided the defendant with "aid or assistance" in making the entry.

13

(2) Interferes with the arrest, stop or detention of another person by using or threatening the use of violence, physical force or physical interference.

It is a class D felony to resist an arrest for a felony. § 575.150.5.

To prove that Jones committed this crime, the state needed to establish three elements: (1) that Jones knew or reasonably should have known that a law enforcement officer was making an arrest or attempting to lawfully detain or stop him; (2) that he resisted this arrest, stop or detention by fleeing from that officer; and (3) that he did so for the purpose of preventing the officer from effecting the arrest, stop or detention. *State v. Pierce*, 433 S.W.3d 424, 434 (Mo. banc 2014). Jones now concedes that the evidence was sufficient to prove that Officer Avery was attempting to arrest him for the crimes committed in C.H.'s home,[8] and that Jones fled from Officer Avery to avoid his actions. In this Court, Jones claims only that there was insufficient evidence to prove that he knew or had reason to know Officer Avery was making an arrest. Jones asserts that he had no reason to know Officer Avery was attempting to arrest him even though the officer identified himself as a police officer, told Jones to stop running, and then gave chase. Instead, Jones argues that, because Officer Avery only said "stop running" and not "stop

---

[8]  When this case was briefed in the court of appeals, Jones also argued in his point relied on that there was insufficient evidence to prove that Officer Avery was attempting to make an arrest when he told Jones to stop running. In his substitute brief filed with this Court, however, Jones drops this argument, and the claim is abandoned. Rule 83.08(b). Jones now expressly concedes that the evidence was sufficient for the jury to find that Officer Avery ordered him to stop intending to arrest him for the felonies he had just committed.

running, you are under arrest," it was reasonable for Jones to believe the officer was– at most – attempting to stop or detain Jones for investigation, not arrest.[9]

"It is not necessary for the officer to specifically say, 'you are under arrest,' when the circumstances indicate the officer is attempting an arrest." *State v. Chamberlin*, 872 S.W.2d 615, 619 (Mo. App. 1994). In *Chamberlin*, the defendant fled in a vehicle while an officer followed him with his emergency lights and siren activated. *Id.* The defendant eventually stopped his car and fled on foot. *Id.* The officer then exited his vehicle and yelled at the defendant to stop. *Id.* The court of appeals found that these circumstances indicated that the officer was attempting an arrest even though the officer did not pursue the defendant on foot. *Id.* The court further found that "[t]he officer's verbal commands and the invocation of his authority as a state trooper were an attempt to effect the arrest of the defendant." *Id.* Accordingly, *Chamberlin* properly holds that this evidence was sufficient for a jury to find that the defendant knew or had reason to know that the officer was attempting to arrest him. *Id.* The present case is similar to *Chamberlin* because the officers in both cases gave a verbal command to the defendants to stop running and invoked their authority as police officers. *See Pierce*, 433 S.W.3d at 434 (defendant is not "immune from arrest (or prosecution for resisting arrest) as long as he runs before the

---

[9] At times, Jones' argument on this point appears to challenge the legality of his arrest in that he claims Officer Avery could not have had probable cause to arrest him at the time he did and, at most, could only have had resasonable suspicion to stop Jones and make further inquiries. But Jones cannot challenge the lawfulness of the arrest as a defense to a charge of resisting arrest. § 575.150.4. Because Jones concedes that Officer Avery was, in fact, attempting to arrest him, the relevant point is whether Jones knew or had reason to know that this is what was occurring.

15

officer attempts to arrest him, nor would such a rule be supported by the language of the statute").

In addition to those circumstances, the evidence in this case showed that Jones had even more compelling reasons to know that Officer Avery was attempting a felony arrest. Immediately after committing the crimes of burglary, attempted robbery, assault, and armed criminal action in C.H.'s home, Jones was running away from the scene of those crimes when a uniformed officer identified himself as a police officer and commanded Jones to stop running. A defendant's "presence at the crime scene and flight therefrom are evidence of consciousness of guilt." *State v. Clay*, 975 S.W.2d 121, 140 (Mo. banc 1998); *see also State v. Rodden*, 728 S.W.2d 212, 219 (Mo. banc 1987) (finding that flight shows a consciousness of guilt).

The jury was entitled to consider what Jones knew and what Jones had just done when deciding whether Jones had reason to know whether Officer Avery was attempting to arrest him for those felonies. *See State v. Whitley*, 183 S.W. 317, 320-21 (Mo. 1916) ("But being guilty, and knowing his guilt thereof (as the inference is from the jury's verdict), the duty was by law incumbent on him to submit to this arrest, under penalty, if he refused, of taking away his defense when tried for any act done by him while resisting arrest.").

Not only was the evidence sufficient for the jury to find that Jones knew he had committed burglary, attempted robbery, and assault, but Jones also does not contest his convictions for those crimes. Because of the "trackback," the evidence also was sufficient for the jury to find that, after committing these crimes and fleeing out the back

16

of C.H.'s house, Jones ran directly into Officer Avery's view. When this officer identified himself and told Jones to stop running, Jones continued to flee. Finally, and most persuasively, Jones continued to flee Officer Avery even after that officer began chasing him. Given all of this, there was a sufficient basis for the jury to infer Jones knew – or reasonably should have known – that he was being arrested for the crimes he had just committed.[10]

For the foregoing reasons, the trial court did not err by overruling Jones' motion for judgment of acquittal on the charge of resisting arrest.

### IV. *Jones' Motion for Continuance Was Properly Overruled*

In his third point, Jones claims that the trial court abused its discretion by overruling his last-minute motion for a continuance on the eve of trial. The decision whether to grant a motion for continuance is committed to the sound discretion of the trial court, and, on appeal, this Court's review is limited to whether the trial court abused that discretion. *State v. Griffin*, 848 S.W.2d 464, 468 (Mo. banc 1993). "Reversal is warranted only upon a very strong showing that the court abused its discretion and prejudice resulted." *State v. Edwards*, 116 S.W.3d 511, 535 (Mo. banc 2003). "[T]he

---

[10]  In support of his argument that he did not know he was under arrest, Jones relies on *State v. Hunter*, 179 S.W.3d 317, 321 (Mo. App. 2005). In *Hunter*, the defendant was a passenger in a pickup. When the driver ran through a red light, a police officer behind him activated the lights on his patrol car and pursued the vehicle. Though the driver had reason to know he was being stopped, *Hunter* holds that the passenger had no reason to know he was being arrested for a felony unrelated to the traffic offense just committed. *Id.* More importantly, *Hunter* notes that the officer never testified he intended to arrest the defendant. *Id.* Here, Officer Avery testified that he ordered Jones to stop and chased after him intending to arrest him for the felonies he had just committed, and Jones concedes this point. *Hunter*, therefore, is distinguishable from the present case and does not support Jones' argument.

17

party requesting the continuance bear[s] the burden of showing prejudice." *State v. Schaal*, 806 S.W.2d 659, 666 (Mo. banc 1991).

Jones moved for a continuance on the morning of the day on which trial was set to begin. He claimed a delay was necessary for defense counsel: (1) to locate a potential defense witness and (2) to conduct a forensic examination of Jones' cell phone and present expert testimony as to the results of that examination.[11] The trial court heard argument on Jones' motion on the morning of the first day of trial. Noting its concerns that the case was four years old, that neither of these issues was raised at the pretrial conference the prior week, and that Jones already had sought and received continuances on four previous occasions, the trial court overruled the motion. Jones raised these issues in his motion for a new trial, preserving them for appellate review, and the trial court overruled that motion.

Last-minute motions for a continuance are not favored. In reviewing the overruling of such a motion, this Court has stated:

> Under Rule 24.10, an application for continuance due to the absence of a witness must show: (1) the materiality of the evidence sought to be obtained and due diligence on the part of the applicant to obtain the witness; (2) the name and residence of the witness; (3) the facts that the witness will prove and that there is no other person who could have been present at trial to testify to such facts; and (4) the application was made in good faith for the purpose of obtaining a fair and impartial trial.

---

[11] In his motion for continuance, Jones also argued that the court should grant a delay to give defense counsel more time to investigate Jones' mental health. Jones has abandoned this claim on appeal, however, and it is not before the Court.

*State v. Salter*, 250 S.W.3d 705, 712 (Mo. banc 2008). "In deciding whether to grant a continuance, the trial court is entitled to consider whether the application meets the requirements of this rule." *Id.* If the trial court finds that the application does not comply with the rule, the court's decision to deny the continuance is not an abuse of discretion. *Id.*

Jones' written motion did not meet the requirements of Rule 24.10 with respect to the witness. The motion merely stated that she lived in the neighborhood and that "at the time of the incident she saw an African-American man with dreadlocks waiting for a bus and that this man is the person responsible for the alleged crimes in this case." The motion does not explain how the witness' name came to light or why, in the exercise of due diligence, defense counsel could not have identified her and secured her testimony earlier. In addition, the testimony ascribed to the witness would not have been of material aid to Jones' defense. Whether she saw a man in the area whom she thinks resembled Jones is not material, nor would it have served to impeach the testimony of the officers who testified only that that they saw no one else (i.e., the witness or this third person) in the vicinity. The officers did not testify – and could not have testified – who was or was not present beyond their sight and hearing.

The witness' speculation that this third person, not Jones, "is the person responsible for the alleged crimes in this case" was of no assistance to Jones' defense because such speculation would not have been admissible, and the motion failed to state that she had the firsthand knowledge of the third party's guilt and Jones' innocence necessary to raise her testimony above mere speculation. *See State v. Rousan*, 961

19

S.W.2d 831, 848 (Mo. banc 1998) ("To be admissible, evidence that another person had an opportunity or motive for committing the crime for which a defendant is being tried must tend to prove that the other person committed some act directly connecting him with the crime."). Based on the sparse description and lack of explanation or foundation for the purported testimony, the trial court did not err in overruling Jones' motion on the ground that it failed to establish the witness would "be able to say anything that would be of any benefit to the defense[.]"[12]

Jones' motion for a continuance also claimed that a delay was necessary for defense counsel to obtain a forensic examination of his cell phone and secure an expert to testify that the "call log" about which Officer Avery testified failed to show that Jones had taken a call lasting several minutes "at or near" the time of the burglary. But the motion fails to allege that counsel exercised due diligence in attempting to obtain this evidence prior to the first day of trial. The motion alleged only that it would take counsel 45 days to secure this evidence, but it does not establish that counsel previously lacked sufficient time or information to seek this evidence in time for trial. The fact that it was Jones' phone (and, therefore, that Jones was the best source of the role the phone might or might not play in his defense) suggests that there was sufficient time and information to pursue this evidence if counsel deemed it helpful. Counsel was appointed

---

[12]  Jones provided greater detail regarding the witness' potential testimony in his motion for new trial, but none of the new information showed that her testimony would contradict the officers' testimony directly on any meaningful issue, nor did any of these new details demonstrate that the witness could link the third party to the crime and not just to the neighborhood.

20

approximately 90 days before trial,[13] or twice as long as the 45 days allegedly needed to test the phone and prepare an expert. Because Jones' motion and argument failed to comply with the requirement in Rule 24.10(a) that counsel show due diligence, the trial court did not abuse its discretion in overruling Jones' motion for a continuance. *See State v. Christeson*, 50 S.W.3d 251, 262 (Mo. banc 2001) (trial court does not abuse its discretion in overruling a motion for a continuance when counsel had adequate time to prepare).[14]

Finally, Jones claims that the trial court abused its discretion in overruling the motion for a continuance because defense counsel had entered an appearance only three months before trial, because counsel was out of the country for a month during that period, and because counsel was preparing other defendants' cases while also preparing for Jones' trial. These arguments were not presented in Jones' written motion for continuance or in Jones' motion for a new trial. Accordingly, they are not properly before this Court, *see* Rule 78.07(a); *State v. Davis*, 348 S.W.3d 768, 769 (Mo. banc 2011) (issue raised for the first time on appeal is not preserved for appellate review), and Jones does not seek plain error review under Rule 30.20.

---

[13] Jones' first counsel was appointed in 2010, shortly after he was charged. This counsel was allowed to withdraw and another counsel appointed following Jones' nine pro se motions for change of counsel.

[14] Jones' motion for continuance also fails to establish that the forensic examination and expert testimony concerning the "call log" on his phone – even if it turned out as Jones hoped – would aid his defense materially. Evidence that Jones answered a phone call lasting several minutes "at or near" the time of the crime does not contradict M.H.'s testimony that Jones missed a call during their struggle or contradict Officer Avery's testimony that the "call log" shows Jones missed three calls in rapid succession at 11:11 p.m. and 11:12 p.m.

21

Even if Jones' last arguments were properly before this Court, they would not justify reversal. He does not claim counsel's absence from the country or his representation of other clients affected the outcome of the trial, nor does Jones offer any explanation as to how any of these facts (or all of them combined) actually prejudiced him. As noted above, counsel had ample time and information to secure examination of Jones' cell phone, and Jones does not claim that defense counsel's travels or other commitments had any effect on counsel's ability to secure a potential witness' testimony even assuming it would have been admissible. Accordingly, even if this claim had been presented to the trial court, the trial court would not have abused its discretion in denying the motion for continuance on such grounds.

### *Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____

Paul C. Wilson, Judge

Breckenridge, C.J., Fischer, Stith and Russell, JJ., concur;
Draper, J., concurs in part and dissents in part in separate opinion filed;
Teitelman, J., concurs in opinion of Draper, J.



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,        )
             )
              Respondent,      )
             )
v.                       )     No. SC94924
             )
JUSTIN FLOYD EUGENE JONES,    )
             )
              Appellant.        )

## OPINION CONCURRING IN PART AND DISSENTING IN PART

I concur in the principal opinion's holding that the circuit court did not err by overruling Justin Floyd Eugene Jones' (hereinafter, "Jones") motion for judgment of acquittal on the charge of resisting arrest and Jones' motion for a continuance. I respectfully dissent, however, from the principal opinion's holding that there was sufficient evidence upon which a jury could find beyond a reasonable doubt that Jones was guilty of committing armed criminal action during the course of the burglary of C.H.'s home. I would hold there was insufficient evidence to support the armed criminal action conviction associated with the burglary charge because Jones completed the burglary as soon as he crossed the threshold into C.H.'s garage and there was no evidence to support the fact that Jones completed the burglary by, with, or through the use, assistance, or aid of the gun he possessed.

Section 569.160.1(3), RSMo 2000,[1] provides that a person commits first-degree burglary:

> [I]f he [or she] knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure…[t]here is present in the structure another person who is not a participant in the crime.

"[A] person 'enters unlawfully or remains unlawfully' in or upon premises when he [or she] is not licensed or privileged to do so." Section 569.010(8). Section 571.015.1 states a person commits armed criminal action when that person "commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon …." Jones does not challenge the sufficiency of his underlying burglary conviction.

The indictment charged Jones with committing the act of burglary when he knowingly *entered unlawfully* an inhabitable structure for the purpose of committing a robbery and while in the structure other people who were not participants in the crime were present. The associated armed criminal action count charged Jones with committing the burglary by, with and through, the knowing use, assistance and aid of a deadly weapon. The jury was instructed accordingly. The principal opinion ignored how Jones was charged for burglary and the caselaw that discusses when a burglary is completed, which I believe are critical components of the analysis of Jones' claim on appeal.

---

[1] All further statutory references are to RSMo 2000.

2

"[A] conviction for burglary requires distinct findings of both unlawful entry and intent to commit a crime therein." *State v. Cooper*, 215 S.W.3d 123, 127 (Mo. banc 2007). In *State v. Pigques*, 310 S.W.2d 942 (Mo. 1958), this Court explained:

> Entry is an essential element of the crime of burglary as understood at common law and as defined by our statute …. Literally, 'entry' is the act of going into the place after a breach has been effected, but the word has a broader significance in the law of burglary, for it is not confined to the intrusion of the whole body, but may consist of the insertion of any part for the purpose of committing a felony…. An entry of a building, that is, an entry (with intent to steal) of the space within the building, is necessary to *a completed crime of burglary*; *but any entry, however slight* (by and part of the body), procured by breaking, with intent to steal (or to commit another crime therein, as the charge may be) *is sufficient*.

*Pigques*, 310 S.W.2d at 945. (Internal citations omitted and emphasis added). *See also State v. Whitaker*, 275 S.W.2d 316, 319 (Mo. 1955) (holding it was not necessary that a defendant get his "whole body" into a structure to commit a burglary because "[t]he least entry of any part of the body is sufficient"); *State v. Tierney*, 371 S.W.2d 321, 323 (Mo. 1963). Several cases have analyzed remarkably similar factual scenarios to Jones' in which the defendant completed his unlawful entry to commit a burglary and then used a weapon thereafter to commit additional offenses once the burglary was complete.

In *State v. Carpenter*, 109 S.W.3d 718 (Mo. App. S.D. 2003), the defendant entered a home by breaking out the glass and kicking in the back door while possessing a shotgun. Once inside, the defendant fired the shotgun. *Carpenter*, 109 S.W.3d at 720. The defendant was convicted of armed criminal action associated with burglary. *Id*. at 721. On appeal, the defendant argued there was insufficient evidence presented that he *gained entry into the home by use of the shotgun* when the evidence demonstrated he

broke the glass and kicked the back door open. *Id.* The court agreed, stating, "[T]he crime of [armed criminal action] is committed in a burglary setting if the weapon or instrument is used to *gain entry for the purpose* of committing a crime therein." *Id.* at 723. The court interpreted sections 569.160 and 571.015 to require the state to prove that a defendant used a weapon to gain entry into a building for the purpose of committing a crime therein by threatening the occupant or breaking open a door with a weapon. *Id.* The court noted the critical distinction between charging the defendant with *unlawfully entering* versus *unlawfully remaining* in the building for purposes of burglary and armed criminal action. *Id.* at 723-24. "What did or did not follow upon his unlawful entry is wholly immaterial to a determination whether [the defendant] committed the crime of first-degree burglary as it was charged here." *Id.* at 723.

*Carpenter* relied heavily on *State v. Dudley*, 51 S.W.3d 44 (Mo. App. W.D. 2001). In *Dudley*, the court reversed a conviction for armed criminal action associated with burglary when the defendant gained entry into the home by kicking in the door then, once inside, used a gun to murder the victim. *Dudley*, 51 S.W.3d at 48. On appeal, the state conceded it failed to prove armed criminal action because it did not show the defendant *gained entry* into the victim's home *by using the gun* because the only evidence presented was that the defendant entered the house by kicking in the door. *Id.* at 52. The court agreed, finding "there is nothing in the record from which a reasonable jury could infer that [the defendant] entered the victim's house unlawfully by, with, or through the use, aid, or assistance of a gun." *Id.*

4

In *State v. Hopkins*, 140 S.W.3d 143 (Mo. App. E.D. 2004), the defendant had to enter four separate doors to reach the victim inside the home, whom the defendant then stabbed. *Hopkins*, 140 S.W.3d at 147. The defendant was charged with armed criminal action and burglary. *Id*. at 158. The court reversed the defendant's armed criminal action conviction, finding that, as the crime was charged, the defendant *completed the burglary upon his unlawful entry* into an occupied home with the intent to commit assault. *Id*. (Emphasis added). The court explained that while there was sufficient evidence that a dangerous instrument was used to commit the assault once inside, evidence of the weapon's use to commit the burglary was "virtually non-existent." *Id*. at 159. The court stated, "[T]he events that occurred subsequent to that unlawful entry are not relevant to a determination of whether [armed criminal action] in connection with the underlying felony of first-degree burglary, as charged, was committed here." *Id*.

In *State v. Collins*, 188 S.W.3d 69 (Mo. App. E.D. 2006), a defendant entered a woman's apartment while she was asleep by breaking the glass on the front door and opening the door. While inside, the defendant used a gun during the course of a rape and robbery. *Collins*, 188 S.W.3d at 72. The defendant was charged with burglary and armed criminal action, among other charges. *Id*. The court reversed the defendant's conviction for armed criminal action, relying on *Carpenter*, *Dudley*, and *Hopkins*. *Id*. at 74-75. The court found the state failed to offer any evidence the defendant entered the victim's apartment "by, with, or through the use, aid, or assistance of a gun." *Id*. "While there was evidence that [the] [d]efendant had a gun, there was no evidence that he used his gun to gain entry into [the] [v]ictim's apartment." *Id*.

5

Finally, in *Obasogie v. State*, 457 S.W.3d 793 (Mo. App. E.D. 2014), a man entered the victim's home while the victim was asleep. *Obasogie*, 457 S.W.3d at 795. The victim awoke and saw the defendant and another man, both carrying firearms, enter her home through the back door. *Id.* The defendant discharged his firearm while inside. *Id.* The defendant was charged with burglary and armed criminal action. *Id.* In his post-conviction relief proceedings, the defendant argued the motion court incorrectly distinguished his case from *Carpenter* and *Dudley* when holding appellate counsel was not ineffective for failing to raise a sufficiency of the evidence challenge in the defendant's direct appeal. *Id.* at 797-98. The court of appeals affirmed, finding the defendant "was openly displaying a gun in his hand as [the victim] saw him enter her house. The jury could reasonably infer that there was an implicit threat to [the victim] by [the defendant's] display of the gun in his hand …." *Id.* at 798. The court also distinguished *Carpenter*, explaining:

> The dicta in *Carpenter* that defendant would have had to use the gun to break open the door or display a weapon and explicitly threaten someone to gain entry, was not required by the language of the statute and was not necessary to reach its holding in that case.

*Id.*

The principal opinion makes short work of the holdings in *Carpenter*, *Hopkins*, and *Obasogie*, dismissing them as incorrect because "use" is not the only term used in section 571.015 to commit armed criminal action. The principal opinion reads section 571.015 so expansively, essentially construing its "nine permutations" in such a way as to render "use, aid, or assistance of a weapon" synonymous with intent to use a weapon or

6

mere possession of a weapon during the commission of another offense. The principal opinion concludes that any other construction of section 571.015.1 robs the words "assistance" and "aid" of any meaning in defining armed criminal action.

In *State v. Reynolds*, 819 S.W.2d 322 (Mo. banc 1991), this Court addressed similar facts and came to a different conclusion. In that case, the defendant entered a home by breaking the glass of a door, reaching inside, and unlocking the door to enter, while carrying a knife in a sheath inside of a boot. *Reynolds*, 819 S.W.2d at 327. Once inside, the victim shot at the defendant, and the defendant fled. *Id*. The defendant was charged with burglary and armed criminal action. *Id*. This Court explicitly rejected the theory that it sufficed to prove the knife was in the defendant's possession and accessible during the burglary to show the defendant committed armed criminal action. *Id*. This Court construed section 571.015 to mean, "the *use* of a dangerous instrument or deadly weapon is an element of the crime …" and "that the intention to use, without actual use, is not enough to convict under the statute." *Id*. at 328-29.

Even if one adopts the principal opinion's expansive reading of section 571.015, which is contrary to *Reynolds*, there is still no evidence in the record that demonstrated how Jones used the gun or how the gun assisted or aided him in crossing the threshold into the garage. The principal opinion recognizes, "C.H. testified that she saw Jones *immediately after he crossed the threshold* of the garage." *Slip Op*. at 10 (emphasis added). The principal opinion ignores this Court's prior caselaw that discusses when an unlawful entry is completed to support a burglary charge.

7

In this case, the evidence demonstrated there were sensors inside of C.H.'s garage that triggered the door to reopen if there was some type of obstruction. Due to the placement of the sensors, it was impossible for Jones to trigger the sensors without inserting some part of his body into the garage. Under *Pigques* and *Whitaker*, Jones accomplished entry as soon as some part of his body triggered the sensors. Therefore, the crime of burglary was complete when Jones unlawfully entered the garage and triggered the sensors, which was *before* C.H. saw him or the gun. *See Carpenter,* 109 S.W.3d at 723 (finding burglary was completed upon the defendant's unlawful entry into the victim's home with the intent to assault her); *Hopkins*, 140 S.W.3d at 159 (holding burglary was completed upon unlawful entry into the victim's home); *Collins*, 188 S.W.3d at 75 (holding defendant completed the burglary upon his unlawful entry into the victim's home).[2] Finally, the completion of the burglary upon entry also contradicts the argument that Jones implicitly threatened C.H. with the gun to gain entry into the garage, distinguishing this case from *Obasogie*.

Jones undoubtedly used the gun to assist and aid him to *remain unlawfully* inside C.H.'s home and commit the subsequent robbery and assault. The state had the option of charging Jones with *remaining unlawfully* by use of the gun or that in effecting entry into

---

[2] *See also*, 3 Wharton's Criminal Law § 324 (15th ed.), stating:

> A burglary is committed when, after breaking, the defendant enters with the requisite intent. Since the intended felony need not be committed nor even attempted, the burglary is completed upon the defendant's entry. Therefore, the burglary is 'completed' at the precise point in time when it is 'committed'; it is committed when any part of the defendant's person or an instrument being used for the purpose of committing the felony intended passes the line of the threshold.

the garage, Jones was armed with a deadly weapon. [3] *See* section 569.160.1(1). Had the state pursued either of these alternatives under the burglary statute, there would be no dispute that Jones committed the associated armed criminal action charge. However, the state charged Jones with *unlawfully entering* the garage by, with, or through the use, assistance, or aid of the gun. The principal opinion works diligently to overcome the charging documents and ignores the corresponding instructions submitted to the jury. Further, the principal opinion has expanded section 571.015 to now punish any mere intention to use (without actual use) or mere possession of a weapon during the course of an offense as sufficient to constitute armed criminal action. Moreover, even setting aside the dicta from *Carpenter* that posited one must physically shoot through the door or explicitly threaten a victim, the record demonstrates Jones did not use the gun to effectuate entry into the garage because he was inside before C.H. observed him. Accordingly, I would find there was insufficient evidence to support Jones' conviction for armed criminal action associated with first-degree burglary and reverse his conviction on that count.

_____
GEORGE W. DRAPER III, JUDGE

---

[3] This is not to suggest a defendant commits two separate burglaries by entering unlawfully and remaining unlawfully within the same inhabitable structure during the same criminal endeavor. There is no question section 569.160.1 contemplates several alternative charging scenarios that do not subject the defendant to multiple burglary charges for a single unlawful undertaking within an inhabitable structure.